505 P.2d 1226

Elmer G. KING and Ruth M. King, husband and wife, Plaintiffs-Appellants,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.

No. 9437.

Supreme Court of New Mexico.

Feb. 2, 1973.

Edward E. Triviz, Las Cruces, for plaintiffs-appellants.

Bivins & Weinbrenner, Las Cruces, for defendant-appellee.

## OPINION

MONTOYA, Justice.

This is an appeal by plaintiffs, hereinafter called "Appellants," from a summary judgment rendered in a suit which was brought to recover damages under a homeowners' insurance policy issued by the defendant insurance company, hereinafter called "appellee."

The parties stipulated that a galvanized iron water line underneath the concrete floor slab, somewhere between the hot water heater and the kitchen in Appellants' home, broke or ruptured, allowing the escape and discharge of water which eroded the soil and proximately caused abnormal settling damage from the pressure of the said water underneath the slab; caused the concrete floor slab to buckle in the living room and the outside walls to crack, resulting in damages to the insured premises in the sum of $2,255.41. It was further stipulated that the leak from the galvanized iron water line occurred from within the plumbing system and was caused by a deterioration in the water line from a chemical reaction known as "electrolysis."

Appellee denied coverage and both parties moved for summary judgment. The trial court granted summary judgment to Appellee and this appeal ensued.

Both parties agree in their briefs that the basis for the trial court's ruling was that the claimed loss by Appellants was not covered under the terms of the policy in question.

The essential facts necessary for a determination of the issues between the parties are stipulated to and the basic issue to be determined is whether or not the loss was covered under the policy.

The first question to be considered is whether the loss was or was not a named peril under Section I of the policy. Under the "perils insured against," only paragraph 17 is applicable, and it reads, insofar as material herein, as follows:

"17. Water escape, meaning loss caused by accidental discharge, leakage or overflow of water or steam from within a plumbing, heating, or air conditioning system or domestic appliance, including the cost of tearing out and replacing any part of the insured building required to effect repairs to the system or appliance from which the water or steam escapes, * * *."

Appellee argues that this damage is not covered by the policy because it was not the result of an "accidental discharge," rather that the damage was due to the process known as electrolysis, a result caused initially by defective installation.

The cases do not support the claim that the loss was not occasioned by an accident; indeed, a wealth of authority sustains the conclusion that an accident occurred.

"* * * [T]he word 'accident' has never acquired any technical signification in law, and when used in insurance contracts, it is to be construed and considered according to the ordinary understanding and common usage of people generally. [Citations omitted.] * * *"

St Paul Fire and Marine Insurance Co. v. Northern Grain Co., 365 F.2d 361 (8th Cir. 1966). The court in St. Paul, supra, quotes from 7A Appleman, Insurance Law and Practice, § 4492, as follows:

"'When used without restriction or qualification in insurance contracts, the term "accident" has been held broader than the restricted definition of an event happening suddenly and violently.'"

The court went on to say:

"Reference to a relatively limited number of cases will suffice to demonstrate

that courts have interpreted and applied the term 'accident', as used in general liability insurance policies, broadly, and have declined to limit its meaning to an event which happened suddenly and violently. [Citations omitted.] * * *"

Kraftsow v. Brown, 172 Pa.Super. 581, 94 A.2d 183 (1953), dealt with a "water damage" policy. In holding the policy to be applicable in a situation where plaintiff's employee negligently used a plunger on the drain on the roof and a cap covering the opening in a wall pipe came off and flooded the basement, the court quoted the following from Hamilton v. American Indemnity Co., 82 Pa.Super. 191 (1923):

> " 'Some authorities hold that the word "accidental" means the happening of an event without fault or negligence on the part of anyone. This is a narrow and restricted meaning. In its ordinary, popular sense, it expresses the thought of an event occurring without design or purpose, or unintentionally on the part of the assured. Given the latter meaning, it does not negative the idea of negligence on the part of one whose physical act the occurrence follows. But it does not include the result of wilful design. If accident and negligence be not opposites, accident and design are * * * .' "

Furthermore, in Cross Properties, Inc. v. Home Indemnity Company, 41 Misc.2d 822, 246 N.Y.S.2d 683 (1964), the court states:

> " * * *. Although an act is attributed solely to negligence, yet it may be an accident. * * *"

In Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co. of New York, 280 App.Div. 665, 116 N.Y.S.2d 876 (1952), the defendant disclaimed liability upon the ground that the occurrence was due to faulty workmanship on the part of the plaintiff and was not caused by accident, and that the damaged property was under the care, custody and control of the plaintiff. In holding the loss was caused by accident and affirming coverage, the court stated:

> "While undoubtedly the intentional infliction of injury cannot be regarded as

an accident and conduct may be so heedless as to be equated to the willful, we cannot take seriously the suggestion that plaintiff's conduct here was more than negligent. Defendant does not go so far as to suggest that negligence on the part of plaintiff absolves the defendant of liability or that the term 'accident' should be so narrowly construed as to rule out an occurrence caused by negligence. Indeed, negligence would be the predicate of any likely liability insured against and defendant concedes that in construing a contract of this kind words should not be given a technical meaning but should be taken as they would be understood by an average man. We have no doubt that the average man would consider the occurrence in question as an 'accident' in the common conception of that word."

■ The authorities cited above indicate that an insurance policy designed to compensate for damages suffered by "accidental means" is no less effective when the damages result from negligence.

That there was a discharge of water from within the plumbing system is undisputed. The fact that the discharge resulted from and was caused by a deterioration in the water line from a chemical reaction known as electrolysis, as stipulated by the parties, does not make it any less an "accident" as that word is understood to mean in its ordinary and common usage. If the water line was negligently installed this does not preclude the "accident" from coverage under paragraph 17 of the policy. As the Supreme Court of Minnesota said in Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122 (1954):

> "There is no doubt that the property damage to the building caused by the application of the defective plaster was 'caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within

the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from *either a known or an unknown cause.*" (Emphasis added.)

In view of the foregoing, it is clear to us from the stipulated facts that the loss suffered by Appellants was loss caused by accidental discharge and leakage of water from within a plumbing system, and that no ruling to the contrary should be allowed to stand.

The next issues before this court are whether the loss was otherwise excluded under the policy, and whether the policy clauses with which we are concerned contain an ambiguity. Under the "losses excluded" the insurer shall not be liable under Section I for:

"(b) (3) water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows, or any other openings in such sidewalks, driveways, foundations, walls or floors, * * *;"

Appellee contends that the loss was, therefore, excluded under the policy, while Appellants contend otherwise. Appellants also argue that, if the loss is not covered under Section I, the pertinent provisions of the policy are ambiguous and any construction of the provisions should be resolved in Appellants' favor.

A case very analogous to the factual situation we have confronting us here, is World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co., 169 F.2d 826 (8th Cir. 1948). There the facts show that a water damage policy was involved which insured all direct loss and damage caused solely by accidental discharge, leakage or overflow of water or steam from enumerated sources, including plumbing systems, and also providing in the exception clause that the insurer should not be liable for damage caused directly or indirectly by floods, inundation, backing up of sewers or drains. The damages in that case resulted when the city's main sewer became overloaded as a result of an unusually heavy rain and the resulting pressure in the sewer caused water to flow back through a soil pipe into insured's building, causing a metal cap covering an opening in the plumbing system to be broken and forced off, resulting in a flooding of the basement. There it was argued that the loss was not caused by an accidental discharge of water from the insured's plumbing system, but was indirectly caused by the backup water from the sewer system, and hence fell within the exception hereinbefore mentioned. The court disposed of those arguments by saying:

"The entire contract must be considered in determining the meaning of each integral part. When so considered it is obvious that the insuring clause was both specific and definite. It did not merely insure against water damage in general terms and leave the door open to the exception of water damage caused by some particular instrumentality without conflict with the general insuring clause. It narrowed the water damage covered to certain carefully circumscribed types of water damage. Included in those narrowly defined types of damage covered was the damage involved in this case— 'damage caused solely by the accidental discharge, leakage or overflow of water * * * from within the * * * Plumbing Systems * * *.' And the scrivener who drew the contract did not stop with confining the water damage covered to such damage as might result from leakage from the plumbing system. The contract even provided that the damage to be covered would have to be the result of water coming from *within* the plumbing system. Nor did it stop there. It excluded Sprinkler Systems from the category of Plumbing Systems. Possibly the ingenuity and resourcefulness of an acute intellect trained in the art of circumscribing insurance coverage could supply additional limiting clauses.

But the contract before us describes the coverage with sufficient particularity to compel the conclusion that the damage directly resulting from the accidental discharge of water from within the plumbing system was covered by the insuring clause of the contract."

In considering the effect of the excepting clause in the World Fire case, supra, the court said it presented two possible alternatives, each of which would lead to the same result. Its reasoning was that the excepting clause was either in irreconcilable conflict with and repugnant to the insurance clause, or that it must be so construed that its meaning will be harmonized with the insuring clause. The court went on to state:

"If the excepting clause be construed as applying to the state of facts in this case, as appellant contends, an irreconcilable conflict must exist between its meaning and the insuring clause, with the result that the contract must be found to be ambiguous. In that event the contract will be construed favorable to the insured who did not prepare it. The application of the latter rule of construction would lead to striking down the excepting clause and an affirmance of the judgment. * * *"

■■■■■ Appellee argues that Section I(b)(3), supra, in particular excludes coverage of damage due to "water below the surface of the ground." We concur with the statement in the World Fire case, supra, which we believe answers that contention:

"* * *. Every part of the contract should, if reasonably possible, be given effect, [Citations omitted.] and the holding that any part of it must be disregarded should be avoided, except in the most extreme situation. * * *"

As held there, the contract must be construed, whenever possible, to give effect to both provisions of the policy, that is, the insuring clause and the excepting clause.

It is not unreasonable to assume that the loss or damage intended to be excepted by the words "water below the surface of the ground" was like the other losses as would result from causes having no connection with the "plumbing system."

■■■■■ If the excepting clause be construed as applying to the state of facts in this case, as Appellee contends, an irreconcilable conflict exists between its meaning and the insuring clause, with the result that the contract must be found to be ambiguous. In that event, the contract will be construed favorable to the insured who did not prepare it. Jacobs v. Camden Fire Insurance Association, 135 F.Supp. 837 (D.C.W.D.Pa.1955), even though denying coverage, states what we believe to be the appropriate rule of construction, citing cases in support thereof as follows:

"* * *. If an ambiguity is apparent in the terms of a policy, the court must construe the contract so as to sustain indemnity if the sense and meaning of the instrument are not thereby destroyed. Stroehmann v. Mutual Life Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; and Tennant v. Hartford, etc., Ins. Co., 351 Pa. 102, 40 A.2d 385. Where the instrument is prepared solely by one party, the ambiguous words of the instrument, such as an insurance policy, are construed more strongy against the scrivener. Markides v. Soffer, 172 Pa.Super. 215, 93 A.2d 99; McElhinney v. Belsky, 165 Pa.Super. 546, 69 A.2d 178; and Restatement, Contracts, Section 236, comment 'd'. Where there is no ambiguity the court must construe the language of a policy in accordance with the plain, ordinary meaning of its terms. Skelly v. Fidelity & Cas. Co., 313 Pa. 202, 169 A. 78. * * *"

Any "abnormal settling" or "buckling" of the concrete floor slab in the instant case, which was not a result of the "accidental discharge, leakage or overflow of water" from the enumerated fixtures, would not have been covered by the applicable provisions of the policy, but where there was an accidental discharge of water from within the plumbing system, there

would be liability. As the court points out in World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co., supra:

"* * *. Such a construction of the entire contract gives effect to both provisions of the policy."

This, of course, is counter to Appellee's argument that "in order for there to be coverage, the damage would have had to result from water that was not below the surface." However, Appellee ignores the fact that a great part of many plumbing systems, by necessity, are installed below the ground. Presumably, if an insurer desired to exclude from coverage that part of the plumbing system which is below the surface of the ground after specifically insuring the overall plumbing system, it could have done so.

■ We agree that the language used in Roach v. Churchman, 431 F.2d 849 (8th Cir. 1970), correctly states the general rule as follows:

"* * * [E]xceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms. * * *"

The strict construction of exclusionary clauses in insurance policies was followed in Chicago, Rock Island and Pacific Railroad Company v. Aetna Insurance Company, 180 Kan. 730, 308 P.2d 119 (1957), where the court said:

"* * * [I]f an insurer intends to restrict the coverage of a policy it should use language clearly stating its purpose. [Citations omitted.]"

■ Thus, the fact that there was water damage due to a break in the plumbing system, which is specifically covered, is no less worthy of coverage simply because a part of that plumbing system was beneath the ground. The terms of the policy should be construed in their plain, ordinary and usual sense.

In Fowler v. First National Life Insurance Co. of America, 71 N.M. 364, 378 P.2d 605 (1963), we approved this well-settled rule of construction when we said:

"It is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of insured or his beneficiary and strictly as against insurer. Also, words, phrases or terms will be given their ordinary meaning unless by definitions in the policy or context in which the word is used requires some other meaning be given."

■ Finally, in addition to a question of ambiguity resulting from a mere reading of the policy, Appellants point out, and the record supports, the logical inference that the insurer's agents were also in doubt as to the applicability of the pertinent provisions of the policy in question. Although Appellants do not argue that theories of waiver and estoppel are applicable here, Appellants' argument is persuasive evidence of the policy's ambiguity. Harr v. Allstate Insurance Company, 54 N.J. 287, 255 A.2d 208 (1969), as quoted in our recent decision in Pribble v. Aetna Life Insurance Company, 84 N.M. 211, 501 P.2d 255 (1972), is in point:

"'It is clear that this court's approach to defenses to claims on insurance contracts has changed very substantially in recent years. Our expressions have come in a variety of issues and contexts, but all have indicated as their keystone the goal of greater protection to the ordinary policyholder untutored in the intricacies of insurance. We have realistically faced up to the fact that insurance policies are complex contracts of adhesion, prepared by the insurer, not subject to negotiation, in the case of the average person, as to terms and provisions and quite unintelligible to the insured even were he to attempt to read and understand their unfamiliar and technical language and awkward and unclear arrangement. Recognition is given to the usual and justifiable reliance by the purchaser on the agent, because of his spe-

cial knowledge, to obtain the protection he desires and needs, and on the agent's representations, whether that agent be a so-called "independent" but authorized representative of the insurer, or only an employee. We have stressed, among other things, the aim that average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations; that it is the insurer's burden to obtain, through its representatives, all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the layman. It is only necessary to list the leading cases.' [Citations omitted.]"

In Harr v. Allstate Insurance Company, supra, as in the instant case, the insurance agent told the insured (Appellants herein) that they were covered for the loss involved, although liability for the loss was later denied by the home office of the Appellee.

In the instant case, Appellant Mr. King, a man who had a third grade education and who worked as a laborer all his life, purchased insurance from insurer's agent Mr. Campbell, a man trained in the specialties of his profession. Mr. King testified that he had bought a previous policy from Mr. Campbell on his former home and when he moved into a new home Campbell convinced him to add "water damage" coverage, which he did. Mr. King's wife testified that Mr. Campbell had called and said: " * * * 'You don't have enough insurance on your house.' * * *." After checking with her husband, Mrs. King called Mr. Campbell back and said:

"A. * * * 'Well, you put on whatever you think we need, increase it whatever you think we need,' and he said, 'I have a'—I believe he said, 'a compact policy, which covers the normal things that happens to houses, * * *."

When Mr. Campbell was reminded of this conversation by Appellants, Campbell advised them that they were covered. Appellants further testified that they never really understood the policy, even after coverage was denied and the applicable provisions pointed out to them.

Appellee, in its brief, cites Park v. Hanover Insurance Company, 443 S.W.2d 940 (Tex.Civ.App.1969), as authority in support of their denial of coverage. That case involved an all risk policy and is distinguishable on the facts. There the water line break occurred at a point where it entered the house beneath the foundation and excessive rust was found at the point of the break. The escaping water came in contact with the foundation only and the softened subsoil resulted in a shifting of the foundation, causing cracks in the wall and other damages. That policy excluded from coverage any loss caused or resulting from "water below the surface of the ground." In that case, one of the named perils insured against was accidental discharge of water used within a plumbing system. The Park case, supra, reached a contrary result from that arrived at in World Fire & Marine Ins. Co. v. Caroline Mills Distributing Co., supra, stating it was distinguishable on the facts as well as the stated exceptions. It is interesting to note that the policy in the Park case, supra, contained an additional exclusion which provided that there would be no recovery for loss caused by "inherent vise, wear and tear, deterioration and rust * * *." The Park case, supra, adopts a line of reasoning contrary to the World Fire case, supra, which we have hereinbefore quoted with approval and which we now adopt as our view of the applicable law in this case.

Other cases cited by Appellee are distinguishable on the facts, or on the exceptions stated in the policies involved.

This leaves for consideration the ultimate disposition to be made herein. We agree that, in view of the stipulation of the parties, there is no material fact in dispute, but we believe that the legal effect of the

facts, as stipulated, has been erroneously construed by the trial court in granting summary judgment in favor of Appellee. We disagree with the conclusion arrived at by the trial court, that the policy did not cover the loss suffered by Appellants.

In view of the foregoing, we now hold that Appellants are entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to vacate its judgment heretofore entered and to enter a judgment in favor of Appellants for the stipulated amount with costs.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.