703 P.2d 882

Lorrine **ESTEP**, a Personal Representative of the Estate of James T. Estep, Deceased, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant-Appellee,**

v.

Lorrine **ESTEP**, in her individual capacity, Defendant-Appellant.

No. 15327.

Supreme Court of New Mexico.

July 29, 1985.

Rehearing Denied Aug. 13, 1985.

James T. Roach, Albuquerque, for defendant-appellant, Lorrine Estep, in her individual capacity.

Helen Burke Bernard, Albuquerque, for plaintiff, as Personal Representative of the Estate of James T. Estep, Deceased.

Alice Tomlinson Lorenz, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendant-appellee.

## OPINION

WALTERS, Justice.

Lorrine Estep, as Personal Representative of the estate of her deceased husband, James T. Estep, and in her individual capacity as an injured claimant, sought a judgment against State Farm Mutual Automobile Insurance Company to declare that the

exclusion of coverage for household members in an automobile liability insurance policy is invalid or, in the alternative, that she is covered by the uninsured motorist provisions of the policy. The trial court granted summary judgment for State Farm on both claims. Mrs. Estep appeals.

On July 18, 1982, Lorrine was a passenger in a 1974 Ford Bronco registered in the name of and driven by her husband, James Estep. The State Farm policy insuring the vehicle provided automobile liability insurance and uninsured motor vehicle coverage. An accident occurred; James died as a result, and Lorrine suffered personal injuries. Lorrine presented a claim against James's estate, alleging injuries sustained as a result of James's negligence in the operation of the vehicle, and she also filed this declaratory judgment action against State Farm.

In granting summary judgment, the trial court sustained the validity of the household exclusion clause contained in the insurance policy, and refused to declare that Lorrine could recover under the policy's uninsured motorist coverage. Mrs. Estep appeals the correctness of the court's ruling on both of these questions of first impression.

Under the terms of the insurance policy, State Farm agreed:

To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

(A) *bodily injury* sustained by *other persons*

\* \* \* \* \* \*

caused by accident arising out of the \* \* use \* \* \* of the *owned motor vehicle;*

The policy further provided, in what is commonly known as the "household exclusion," the following:

This insurance does not apply \* \* \*

\* \* \* \* \* \*

(h) \* \* \* TO BODILY INJURY TO ANY INSURED OR ANY MEMBER OF THE FAMILY OF AN INSURED RESIDING IN THE SAME HOUSEHOLD AS THE INSURED.

(All emphasis to the policy language has been added.) Mrs. Estep fits within the definition of both alternatives listed in Exclusion (h), since the policy defines an "insured" as including the spouse of the named insured, and she was also a member of the family residing in the same household as James.

Mrs. Estep's principal argument is that the household exclusion clause is void as against public policy because it conflicts with those provisions of the Financial Responsibility Act, NMSA 1978, Sections 66–5–201 to 66–5–248, as were in effect at the time of the accident in this case. It is her contention, first, that the purpose of the Act was to provide protection to members of the general public from injury resulting from operation of motor vehicles, and to protect the vehicle operator from suspension of his license if a judgment of liability should be rendered against him but he was insured at the time of an accident; and secondly, that the primary purpose of protecting persons injured through motor vehicle accidents is frustrated by the household exclusion clause.

■ Suggesting that New Mexico's public policy regarding automobile insurance coverage is reflected in our statutes and in case law, we are reminded by appellant that exclusionary clauses in insurance policies require a narrow construction, particularly when the insurer has expressed coverage through broad promises. *King v. Travelers Insurance Co.,* 84 N.M. 550, 505 P.2d 1226 (1973).

Looking to the statutes to discern the legislature's concerns (and we refer to the statutes effective in 1982), we note that Section 66–5–213 of the Financial Responsibility Act provides that an unsatisfied judgment against a motorist shall be forwarded to the division of motor vehicles upon the request of the judgment creditor or his attorney. Section 66–5–215 requires that, upon receipt of the certified copy of a judgment, the division of motor vehicles "forthwith suspend the license and registration \* \* \* of any person against whom such judgment was rendered, except as herein-

after otherwise provided * * *." Section 66–5–219 then makes the following exception:

The provisions of * * * [Section] 66–6–215 NMSA 1978 shall not apply

A. to the driver or owner if the owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident * * *

Section 66–5–230 outlined the policy requirements:

A. A "motor vehicle liability policy" means an owner's policy or an operator's policy of liability insurance, certified as provided in Section 66–5–227 or Section 66–5–228 NMSA 1978 as proof of financial responsibility for the future and is-sued * * * by an insurance carrier duly authorized to transact business in this state to or for the benefit of the person named therein as insured.

B. The owner's policy of liability insurance:

* * * * * *

(2) shall insure the person named therein, and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such vehicle * * *

■ We apply the definition of "motor vehicle liability policy" in Section 66–5–230(A) to "owner's policy of liability" referred to in Section 66–5–230(B) and to "automobile liability policy" referred to in Section 66–5–219(A), because the Act nowhere defines "owner's liability policy" or "automobile liability policy." The Supreme Court of Arizona agreed that the meanings were the same, in *Jenkins v. Mayflower Insurance Exch.*, 93 Ariz. 287, 380 P.2d 145 (1963), and we concur in its rejection of "artful distinctions" between *motor vehicle* liability policy, *owner's* liability policy and *automobile* liability policy. The terms are not contradistinctive. Read together, the statutes require a policy of insurance enabling owners of motor vehicles to respond in damages to innocent victims injured by negligent drivers.

■ With some logic, Mrs. Estep urges that the household exclusion clause in the insurance policy in this case is in conflict with the requirement of Section 66–5–230(B)(2) that the policy *"shall* insure * * * against loss from *liability imposed by law."* (Her emphasis.) We have held that when an insurance provision conflicts with the public policy expressed in a statute, it is void. *Chavez v. State Farm Mutual Automobile Insurance Co.,* 87 N.M. 327, 329, 533 P.2d 100, 102 (1975). New Mexico has established that interspousal immunity is an "archaic precept" out of tune with and contrary to public policy. *Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947 (1975). Since a wife in this jurisdiction has a cause of action for injuries suffered because of her husband's negligence, it is difficult to discern how a fundamental public policy purpose of the Financial Responsibility Act—*i.e.,* to provide financial protection to those who sustain injury through the negligence of motor vehicle owners or operators—is served, or how the requirement of the Act—*i.e.,* to provide proof of financial responsibility for losses from liability imposed by law which arise from the use of an insured motor vehicle—is observed, when the family exclusion clause in the policy specifically carves out from coverage a considerable segment of the "other" persons described in Section 66–5–230(B)(2) who are entitled by law to recover for the owner's or driver's negligence.

Our bemusement is not diminished when we consider what is commonly referred to as the "Conformity Clause" of State Farm's policy, wherein State Farm warrants to its insured that the policy complies with "any motor vehicle financial responsibility law * * * to the extent of the coverage and limits required thereby * * *." (The clause continues and adds " * * * but not in excess of the limits of liability stated in this policy." "Limits of liability" is elsewhere defined in the policy as meaning the

policy's stated monetary limits of liability; it does not refer to the limits imposed by exclusion of liability coverage to a class of certain persons.) The Act *mandates* protection for "loss from liability imposed by law for damages arising out of the * * * use of such vehicle." § 66–5–230(B)(2). State Farm's inclusion of a restriction against coverage for household members is not only a contradiction of the "broad promise" (*King v. Travelers, supra*) in its "Conformity Clause" warranty, but it is a violation of the requirements of the Act and a repudiation of New Mexico's public policy. *See Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975).

Under materially and substantially identical Financial Responsibility Acts, other jurisdictions have reached the result we adopt today. For extremely thoughtful and exhaustively researched opinions on the questions of insurance exclusions and public policy as related to the provisions of acts requiring proof of financial responsibility, we are impressed with the expositions of Justice Williams in *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wash.2d 373, 622 P.2d 1234 (1980), and Paulson, J., in *Hughes v. State Farm Mut. Ins. Co., supra. See also Transamerica Ins. Co. v. Royle*, 656 P.2d 820 (Mont.1983), for a reasoned discussion of the interaction between statutory financial responsibility requirements and legal liability upon exclusionary insurance clauses.

State Farm, on the other hand, relies on decisions in a majority of jurisdictions which have upheld the exclusionary clauses on grounds of freedom of contract or minimization of fraudulent or collusive claims. *E.g., Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599 (Iowa 1983); *Farmers Ins. Exch. v. Cocking*, 29 Cal.3d 383, 173 Cal.Rptr. 846, 628 P.2d 1 (1981); *United Farm Bureau Mut. Ins. Co. v. Hanley*, 172 Ind.App. 329, 360 N.E.2d 247 (1977).

Our examination of the divergence in the majority and minority decisions on the questions raised by this appeal, and our review of the comparable statutes in the various jurisdictions, lead us to conclude that only the degree to which considerations of public policy are applied separates the results reached. We consider that our legislature's requirements for a policy covering security for a first accident, as well as for assuring financial responsibility for injuries caused, could not more clearly express a public policy consistent with the decisions of those jurisdictions we approve.

This Court has previously recognized that concerns of fraudulent and collusive claims may not be accepted as justification to subvert concerns for persons "free from the evil" of participating in fraudulent or collusive lawsuits. *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975). We reiterate what we held there: that denial of negligence actions to an entire class of persons—here, all family members—cannot be tolerated simply because some undefined portions of that class might instigate fraudulent lawsuits. Instead, we must recognize that the possibility of collusion exists to some extent in any case, and rely upon the judicial process to sift the evidence in separating truth from falsity to arrive at the correct result. *See also Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980), and the realistic dispatch of this dubious theorem in *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907 (1975).

With respect to the freedom of contract argument, we suggest, as did the court in the second case of *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d 203, 211, 643 P.2d 441, 445 (1982), that to say there is freedom of contract regarding inclusion or exclusion of coverage for family members in these cases "is to ignore reality." The discussion in *Wiscomb* of the "take-it-or-leave-it" nature of obtaining automobile liability coverage, and the effect of the policy's exclusion on third parties who are or may be ignorant of the insurance arrangements and unable or incompetent to contract for coverage for themselves, illustrates the fragility of any assertion that the terms of this or similar insurance policies truly are the product of conscious bar-

gaining between the parties. The argument might be more credibly made were there evidence that insureds had been, or traditionally are, offered the choice of including or excluding coverage for family members. There is no such evidence in this record.

State Farm has attempted further to deflect the impact of the decisions we find persuasive by insisting that Mrs. Estep was denied coverage in this case because she is an "insured," rather than because she is a member of the "household." We do not think that a distinction between "insureds" and other members of the household is a significant factor in the treatment of the issue. "Insured" is generally defined in automobile policies (as it is in the instant case) to include most if not all of the members of the household. In *Hughes*, denial of coverage under the "insured" exclusion met the court's response that coverage required by financial responsibility statutes must be extended to that liability imposed by law. Section 66–5–230(B) states that requirement. The husband's liability to his injured wife, in New Mexico, just as in *Hughes*, is clearly imposed by law; ergo, the claimed exclusion as an "insured" is as susceptible to a holding of invalidity as is the household exclusion when a member of either class is legally entitled to recover for damages inflicted by the negligent driver.

To hold otherwise would be inconsistent with our earlier determination that public policy and the statutes do not permit insurance companies to limit the class of beneficiaries in a policy of motor vehicle liability insurance. The fundamental purpose for the enactment of financial responsibility laws—namely, protecting innocent accident victims from financial hardship—is no less frustrated when the beneficiary limitation applies to the "named insured" [or an included "insured"] than when it applies to a broader and more comprehensive group, *i.e.*, the family or household of the named insured. In either case, an innocent accident victim may suffer financial hardship if such clauses are validated. Conse-

quently, we find that such an exclusion also violates public policy and the statutes, and is therefore void.

*Hughes v. State Farm Mut. Auto Ins. Co.*, 236 N.E.2d at 886. *See Dowdy v. Allstate Ins. Co.*, 68 Or.App. 709, 685 P.2d 444 (1984), to the same effect.

▬ Finally, State Farm relies on *Larson v. Occidental Fire & Casualty Co.*, 79 N.M. 562, 446 P.2d 210 (1968), to assert that only insureds holding *certified* policies fall under the requirements of the Financial Responsibility Act, and then that the protections of the Act apply only to persons injured in a future accident. We expressly overrule any such implications or expressions in *Larson*. It is clear to us that the Act in existence at the time of that decision, NMSA 1953, Sections 64–24–65 and –76, saved the driver or owner from suspension of his license if, at the time of the *first* accident, he had in effect an automobile policy providing minimum coverage for damages for liability arising out of the accident. A certified policy, under the old law (§ 64–24–84) as well as under the new (§ 66–5–219), means simply the certificate of the insurance company, filed with the motor vehicle division, verifying *that the person required to furnish evidence of financial responsibility* has in effect a policy meeting the minimum liability coverage provisions of the Act. NMSA 1953, Section 64–24–82, required such proof when one subject to its provisions sought to register or re-register his motor vehicle. That is still the reason for requiring *certified* policies. §§ 66–5–205, –206. Obviously, one was not *required* to furnish such evidence until an accident had occurred. Consequently, the necessity for proving a *certified* policy to avoid license suspension became operative only when the results of the first accident called into effect the penalty of suspension. To hold as State Farm suggests would elevate the provision of a "certified" policy above the conformity clause provision of the policy and the purpose of legislation aimed at protecting innocent accident victims. We have already expressed our view that the conformity

clause of the insurance contract must prevail because it comports with New Mexico's public policy. We do not agree with *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885 (10th Cir.1980), that the Financial Responsibility Act was only to mandate insuring provisions for drivers coming within its purview. It established a method for keeping uninsured vehicles off the highways, but its principal thrust was to provide financial response in damages for highway victims. "Certified" policies then and now permit vehicle registration and license renewal following an accident and they redound only to the benefit of automobile owners and drivers seeking to avoid suspension of driving privileges; the terms of a policy (whether certified or not) which warrant financial responsibility, then and now, mandate coverage for the liability imposed by law.

■ We hold that the "insured" and "household" exclusions contained in motor vehicle liability policies issued or delivered in New Mexico were and are contrary to public policy and the statutes of this state, and they are therefore invalid exclusions.

We need not at this time decide plaintiff's alternative argument that, applying the rationale adopted herein to invalidate exclusionary clauses in adhesion contracts of insurance, in some instances a plaintiff in the circumstances of Mrs. Estep might be able to claim coverage for damages under the "uninsured motorist" provisions of her husband's policy. Suffice it to say that the legislature clearly expressed its purpose in Section 66–5–201.1:

> The legislature is aware that motor vehicle accidents in the state of New Mexico can result in catastrophic financial hardship. The purpose of the Mandatory Financial Responsibility Act [66–5–201 to 66–5–239 NMSA 1978] is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.

The courts are obliged to accede to the legislative purpose in applying the statutory law governing mandatory insurance.

This matter is remanded to the district court with directions to set aside the summary judgment and reinstate the cause on the trial docket.

IT IS SO ORDERED.

SOSA, Senior Judge, and NEAL, J., concur.

RIORDAN and STOWERS, JJ., dissent.

RIORDAN, Justice (dissenting).

I dissent. I believe that the majority is in error in relying on NMSA 1978, Section 66–5–230(B)(2), in support of their position. In my view, that provision is directed at other persons "using" the insured vehicle as the driver, not as a passenger. I agree with Justice Stowers' analysis on the other issues

STOWERS, Justice, dissenting.

I dissent. The Financial Responsibility Act, NMSA 1978, Sections 66–5–201 to –248 (Orig.Pamp.) (the Act) is not applicable to this case because Mrs. Estep's deceased husband does not fall within the purview of the Act as required by Section 66–5–205, which states:

> The provisions of the Financial Responsibility Act [66–5–201 to 66–5–248 NMSA 1978] requiring the deposit of proof of financial responsibility for the future, subject to certain exemptions, *shall apply with respect to persons who have been convicted of or forfeited bail for certain offenses under motor vehicle laws or who have failed to pay judgments or written settlement agreements upon causes of aciton* [action] arising out of ownership, maintenance or use of vehicles of a type subject to registration under the laws of this state. (Emphasis added.)

(The Financial Responsibility Act was changed to the Mandatory Financial Responsibility Act, NMSA 1978, Sections 66-5-201 to -239 (Repl.Pamp.1984) and became effective January 1, 1984. The Mandatory Financial Responsibility Act is not applicable to this case.)

Thus, the owner or person covered by the policy must have been brought within the scope of the Act by a prior conviction or forfeiting bail for certain motor vehicle offenses or for having failed to pay a judgment or written settlement agreement upon a cause of action arising out of ownership, maintenance, or use of vehicles before the Act's provisions applied. Because none of the above was alleged, the Act did not apply, and the household exclusion clause contained in the policy controls.

The majority's opinion is clearly not supported by a reading of the entire Act. In fact, what the majority has done is to create law under the guise of public policy, thereby substituting its judgment for that of the Legislature.

"The term [public policy] in itself imparts something that is uncertain and fluctuating, varying with the changing economic needs, social customs, and moral aspirations of a people * * * For that reason it has frequently been said that the expressive public policy is not susceptible of exact definition. But for purposes of judicial application it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived, or derivable by clear implication from the established law of the state, as found in its constitution, statutes, and judicial decisions * * * Hence, since * * * it is the duty of the Legislature to make laws and of the court to expound them, * * * the subjects in which the court undertakes to make the law by mere declaration (of public policy) should not be increased in number without the clearest reasons and the most pressing necessity."

*State v. Lavender*, 69 N.M. 220, 231-232, 365 P.2d 652, 663-664 (1961) (quoting *Barwin v. Reidy*, 62 N.M. 183, 192-193, 307 P.2d 175, 184-185 (1957)). The facts of this case did not warrant such action by the majority.

New Mexico is committed to the concept that valid contracts between parties govern their rights and duties. In this case the contract was valid because the parties, who were competent, freely entered into the contract. *Jim v. CIT Financial Services Corp.*, 87 N.M. 362, 533 P.2d 751 (1975); *Smith v. Price's Creameries*, 98 N.M. 541, 650 P.2d 825 (1982). Furthermore, exclusion provisions in insurance contracts will be enforced so long as their meaning is clear and they do not conflict with statutory law. *Chavez v. State Farm Mutual Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975). Because the insurance contract provisions were neither ambiguous or in conflict with statutory law, it was not for this court to alter or amend the provisions of an otherwise legal contract for the benefit of one party and to the detriment of another. *Smith v. Price's Creameries.*

Finally, the majority concludes by stating that the Legislature expressed its purpose in NMSA 1978, Section 66-5-201.1 (Repl. Pamp.1984); however, Section 66-5-201.1 is not applicable to this case because it did not become effective until January 1, 1984.

For the above reasons, I respectfully dissent.