896 P.2d 479

George S. KITCHENS and James Thomas, individually and as father, next friend, and guardian of Adam Thomas, a minor, Plaintiffs–Appellants,

v.

HOUSTON GENERAL INSURANCE COMPANY, Plaintiff-in-Intervention/Appellee,

Raymond Guzman and Benjamin Guzman, d/b/a Quality Auto Detailing and Bob Turner's Ford Country, Inc., Defendants.

No. 22227.

Supreme Court of New Mexico.

April 27, 1995.

Rehearing Denied June 9, 1995.

Cynthia A. Fry, Dennis R. Francish, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Charles E. Stuckey, Albuquerque, for appellee.

## OPINION

BACA, Chief Justice.

George Kitchens and James Thomas, individually and as father, next friend, and guardian of Adam Thomas (collectively "Appellants"), appeal from an order by the district court in favor of Appellees Houston General Insurance Company (Houston) denying Appellants declaratory relief. We address one issue on appeal: Whether an individual working in a business of servicing vehicles, having been given initial permission to use a covered vehicle, is subject to an exclusion for persons using covered vehicles while in the business of servicing vehicles if an accident occurs while the individual is using the vehicle solely for personal reasons. We note jurisdiction under SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and reverse.

### I.

On April 24, 1991, Raymond Guzman worked at Quality Auto Detailing (Quality), an automobile detailing shop owned by his brother, Benjamin Guzman. The shop is located on the automobile sales lot of Bob Turner's Ford Country, Inc., (Turner) in Albuquerque at the corner of Interstate 25 and Lomas Boulevard (the Lomas shop). Benjamin operates another detailing shop in Albuquerque on Wyoming Boulevard (the Wyoming shop) approximately ten miles east of the Lomas shop. At both locations, Quality provides detailing services for used cars sold by Turner. Turner managers accepted the

practice of Quality employees driving Turner vehicles to the Wyoming shop as being within ordinary business.

On April 24, 1991, Robert Scott, a Turner manager, gave Raymond the keys to a 1987 Ford with instructions to detail it. Raymond drove the vehicle to the Wyoming shop for detailing. Raymond testified that Scott was aware that he drove the car to the Wyoming shop. Scott, on the other hand, testified that he instructed Raymond to detail the vehicle at the Lomas shop. Instead of detailing the vehicle at the Wyoming shop that day, Raymond decided to detail it the following day. He locked the Wyoming shop and drove the vehicle to his brother's home where he and a fellow employee consumed one and one-half quarts of beer. Afterwards, Raymond dropped off the fellow employee. On the way home Raymond collided with another vehicle occupied by Appellants. Appellants all were injured in the accident.

On January 14, 1992, Appellant Kitchens filed suit against Raymond and Turner, alleging that at the time of the accident, Raymond was an employee of Turner acting within the course and scope of his employment. On May 11, 1992, Turner filed a motion for summary judgment, arguing Raymond was not an employee of Turner or acting within the course and scope of employment. On August 4, 1992, the trial court granted summary judgment in favor of Turner. On October 15, 1992, Appellant Kitchens filed a motion to amend the complaint and add Benjamin as a defendant. On November 3, 1992, Houston was given leave to file a complaint in intervention. On January 12, 1993, Appellants Thomases filed a complaint in intervention against Raymond and Benjamin. On December 22, 1993, the trial court set aside the summary judgment granted in favor of Turner. On February 14, 1994, the trial court again granted summary judgment in favor of Turner and against Appellants, concluding that Raymond was not an employee of Turner and was not in the course and scope of employment with Turner at the time of the accident. On April 11, 1994, the trial court granted judgment for declaratory relief in favor of Houston, concluding *inter alia* that because Raymond was not covered by the Houston policy, Houston was not obligated to provide defense and indemnity to Raymond for Appellants' claims. Appellants appeal from the judgment for declaratory relief.

## II.

■ We address whether the trial court erred in concluding that Raymond is not covered by Houston's garage policy. Houston argues the trial court was correct to conclude that under an exclusion provision in the policy, Raymond was not insured. The provision defines "insured" as:

> (1) You [named insured] for any covered "auto."
>
> (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow *except:*
>
> . . . .
>
> (c) Someone using a covered "auto" while he or she is working in a business of selling, *servicing*, repairing, parking or storing "autos" unless that business is your "garage business." (Emphasis added).

Houston argues that "detailing" is within the meaning of "servicing." Therefore, Houston argues, Raymond is excluded as an insured because he was using the vehicle while working in a business of servicing autos at the time of the accident. We disagree and hold that the exclusion provision is inapplicable and, that under *Allstate Ins. Co. v. Jensen,* 109 N.M. 584, 788 P.2d 340 (1990), Raymond is covered under Houston's insurance policy.

Contrary to Houston's assertion, the exclusion provision does not apply here. The plain language of the exclusion provision is clear to exclude from coverage those persons who use the vehicle *while* working in the business of "servicing" vehicles. At the time the accident occurred, however, Raymond was not using Turner's vehicle while working in the business of "servicing" autos. Instead, the accident occurred while Raymond was using the vehicle on a lark. Although Raymond had driven the vehicle to the Wyoming shop for detailing, he decided to not do the job until the next day. Instead, he locked the shop and quit for the day. From the

time Raymond locked the Wyoming shop for the day, he was no longer working. It follows then that Raymond was not "servicing" autos after he arrived at his brother's home where he drank beer and socialized. Certainly, Raymond cannot be said to be "servicing" autos while on his way home *after* he left his brother's home and when the accident occurred. The exclusion provision of Houston's policy does not apply.[1]

■ The question remains, however, of whether Raymond is covered under Houston's policy for an accident that occurred while he was using Turner's vehicle outside the scope of Turner's (Scott's) permission. We believe *Jensen* is dispositive. In *Jensen*, we addressed whether a driver, although given permission by the owner to drive a vehicle, was excluded from coverage by an insurance policy which limited coverage to use of the vehicle within the scope of permission. In doing so, we first recognized that an insurance policy could not be more restrictive than NMSA 1978, Section 66–5–221(A)(2) (Repl.Pamp.1994), of the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (Repl.Pamp.1994) (MFRA). *Jensen*, 109 N.M. at 586, 788 P.2d at 342. Section 66–5–221(A)(2) requires an owner's certified motor vehicle liability policy to "insure the person named in the policy and any other person, as insured, using any such motor vehicle with the express or implied permission of the named insured." We also recognized that the express purpose of the MFRA is to

> require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.

*Jensen*, 109 N.M. at 587, 788 P.2d at 343 (quoting § 66–5–201.1). Because the purpose of automobile liability insurance "is for the benefit of the public generally, as well as insured," Section 66–5–221(A)(2) must be broadly interpreted. *Id.; see also United Servs. Auto. Ass'n v. National Farmers Union Prop. & Cas.*, 119 N.M. 397, 400, 891 P.2d 538, 541 (1995) (holding that omnibus clause extends coverage "to any subsequent permittee operating an insured vehicle as long as the named insured has given his or her initial permission to use the vehicle"). In *Jensen* we held that an omnibus clause to an insurance policy "must provide coverage to any person using the insured vehicle with the owner's consent, *without regard to any restrictions or understanding between the parties on the particular use for which the permission was given.*" 109 N.M. at 587, 788 P.2d at 343 (emphasis added).

Although we need not address whether Scott gave Raymond permission to drive the vehicle to the Wyoming shop, we do note there clearly is evidence that Scott gave Raymond permission to drive the vehicle. Accordingly, Raymond, with initial permission to drive the vehicle, and without regard to any restriction by Scott on its use, would be covered under Houston's policy.

The initial permission rule should not discourage owners from imposing restrictions upon the use of borrowed vehicles. These restrictions will not, however, operate to exclude from coverage a driver who, with express or implied permission, uses an insured vehicle. *See id.*

Houston also argues *Jensen* applied the initial permission rule to only certified motor vehicle liability policies. We do not agree.

■ In *Jensen*, the Court noted the parties had agreed Section 66–5–201(A)(2) applied to the insurance policy in question. We also recognized that it was not clear that the statute, which refers to "certified" motor vehicle liability policies, applied to all motor vehicle liability policies. We deferred judg-

---

1. We express no opinion on whether auto "detailing" is within the meaning of "servicing" or "garage operations" under the exclusion provision. The determination of this question is of no significance to our holding. Similarly, we express no opinion on whether the exclusion provision is valid in light of our discussion of *Allstate Ins. Co. v. Jensen*, 109 N.M. 584, 788 P.2d 340 (1990), and the scope of permission.

ment, however, as the question was not properly before the Court. *Id.* at 586 n. 2, 788 P.2d at 342 n. 2. We deem this case appropriate to resolve the issue.

Use of the phrase "certified motor vehicle liability policies" was significant before the MFRA was enacted. Before that time, the Financial Responsibility Act conditioned motor vehicle registration on proof of financial responsibility only in those "cases such as an unsatisfied judgment against a motorist." *Id.; see also Estep v. State Farm Mutual Auto. Ins. Co.,* 103 N.M. 105, 107–08, 703 P.2d 882, 884–85 (1985) (discussing policy of requiring motorists to file proof of financial responsibility with division of motor vehicles). In that situation, a motorist could avoid suspension of a driver's license or vehicle registration by filing a certificate of insurance with the New Mexico Division of Motor Vehicles. The certificate must have verified that the "motorist had in effect at the time of the accident a policy meeting the minimum liability coverage of the Financial Responsibility Act." *Jensen,* 109 N.M. at 586 n. 2, 788 P.2d at 342 n. 2. After such a filing, the insurance policy was "certified" and could not be canceled before notifying the division. With passage of the MFRA, this limited application of verifying financial responsibility no longer applies.

Nonetheless, Section 66–5–221 refers to a "certified motor vehicle liability policy." In view of the overriding policy of the MFRA, we see no practical distinction between a certified motor vehicle liability policy and a motor vehicle liability policy except insofar as they simply are alternate methods of proving financial responsibility.

> A certified policy, under the old law as well as under the new means simply the certificate of the insurance company, filed with the motor vehicle division, verifying *that the person required to furnish evidence of financial responsibility* has in effect a policy meeting the minimum liability coverage provisions of the [MFRA].

*Estep,* 103 N.M. at 110, 703 P.2d at 887 (citations omitted). Moreover, Houston has offered no useful grounds to exempt one type of insurance policy and not another from the express purposes of the MFRA.

Additionally, if we were to somehow exempt Houston based on this artful distinction, we would totally emasculate the purpose of the MFRA, which is to protect the public *as a whole. See id.* at 108, 703 P.2d at 885. It is the MFRA in its entirety and not its individual sections that effectuate the overriding policy. Indeed, it is the policy of the MFRA to which we must continually defer. *See United Servs. Auto. Ass'n,* 119 N.M. at 400, 891 P.2d at 541 (applying initial permission rule to second permittees based on policy of MFRA); *Estep,* 103 N.M. at 108, 703 P.2d at 885. We hold the initial permission rule is not limited to "certified" motor vehicle liability policies.

### III.

In conclusion, we hold that the exclusion provision of Houston's insurance policy does not apply to this case. We also hold that if Raymond had Turner's initial permission to use the vehicle, he would be covered under Houston's insurance policy even though the accident occurred outside the scope of Turner's permission. We reverse and remand for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.