751 P.2d 693

**Richard RUSSELL, Petitioner,**

v.

**PROTECTIVE INSURANCE COMPANY, Insurer, and Merchants Fast Motorline, Inc., Employer, Respondents.**

**No. 16966.**

Supreme Court of New Mexico.

March 22, 1988.

Bruce P. Moóre, Duhigg, Cronin & Spring, David L. Duhigg, Albuquerque, for petitioner.

Bradley & McCulloch, Sarah M. Bradley, Albuquerque, for respondents.

1. NMSA 1978, Sections 59A–16–1 to –30.

## OPINION

SOSA, Senior Justice.

In *Russell v. Protective Ins. Co.* (1987), we ruled that NMSA 1978 §§ 59A–16–1 to –30 (Trade Practices and Fraud), and particularly §§ 59A–16–20 and –30, allow a cause of action against workers' compensation insurers for bad faith refusal to pay compensation benefits to workers. We held that the cause of action must be for damages unrelated to the worker's physical or psychological job-related disability. On October 13, 1987, respondents Protective Insurance Company (Insurer) and Merchants Fast Motorline, Inc. (Employer) filed their motion for rehearing urging us to reconsider our opinion in *Russell* and to allow "extensive briefs to be filed by the parties as well as other interested persons (amicus curiae) before making a final determination in this case." Upon consideration of respondents' motion, we withdraw the opinion originally submitted and substitute in its stead the following:

This case is before the court on petition for writ of certiorari. Petitioner Richard Russell (Russell) alleged in count II of his complaint that respondent, Protective Insurance Company (Insurer), had refused "to attempt in good faith to effectuate a prompt, fair and equitable settlement of [his workers' compensation] claim." The language tracks NMSA 1978, Section 59A–16–20(E). The Insurer filed a motion to dismiss count II of the complaint. The motion was denied with leave to file an interlocutory appeal. On appeal, the court of appeals reversed the trial court. After reviewing the record and briefs on appeal, we reverse the court of appeals.

The issue concerns the applicability of the New Mexico Insurance Code, Article 16, "Trade Practices and Frauds,"[1] to the Workers' Compensation Act.[2] The New Mexico Insurance Code was enacted by the legislature in 1984, two years after our opinion in *Dickson v. Mountain States Mut. Casualty Co.*, 98 N.M. 479, 650 P.2d 1 (1982), in which we denied recovery to a

2. NMSA 1978, Sections 52–1–1 to –70 (Repl. Pamp.1987).

worker who had sought damages from her employer's compensation carrier for bad faith refusal to pay hospitalization and medical expenses. In *Dickson* we stated:

> This Court has expressly stated that if the compensation act provides a remedy for the alleged wrong, then that remedy is exclusive. Here, the alleged wrong is the refusal to pay a medical bill. The compensation act clearly provides a remedy. As noted in [*Chavez v. Kennecott Copper Corp.*, 547 F2d 541 (10th Cir. 1977)] and in [*Escobedo v. Am. Employers Ins. Co.*, 547 F.2d 544 (10th Cir. 1977)], a plaintiff need only file a complaint in state court to compel payment of any benefits to which she may be entitled. A defendant's responsibility to pay, if it is in fact responsible, exists solely by virtue of the Workmen's Compensation Act [now referred to as Workers' Compensation Act]. The Act itself provides the benefits and the remedies for any failure to pay.

*Id.* at 481, 650 P.2d at 3.

In *Gonzales v. United States Fidelity & Guar. Co.*, 99 N.M. 432, 659 P.2d 318 (Ct. App.1983), the court of appeals addressed a somewhat similar situation when it held that a workman had no independent cause of action against an insurer who allegedly acted in bad faith by attempting to coerce the workman into accepting an unfavorable compensation settlement. In that case, the workman had argued that the Unfair Insurance Practices Act[3] gave him an implied private right of action against the insurer.

The Unfair Insurance Practices Act had the same purpose as the present New Mexico Insurance Code, namely, "to regulate trade practices in the insurance business and related businesses in accordance in part with the intent of Congress as expressed in * * * 15 U.S.C. Sections 1011 to 1015." NMSA 1978, § 59A–16–2. Section 5(I) of the prior act is equivalent to the present Section 59A–16–20. Under the former act, the insurance superintendent of New Mexico had authority to assess civil penalties against offending insurance com-panies. There was no private right of action. The new act explicitly grants a private right of action. § 59A–16–30.

Thus the issue is narrowed as follows: In light of the legislature's enactment of a new act with a private right of action, do the decisions in *Gonzales v. United States Fidelity & Guar. Co.* and *Dickson v. Mountain States Mut. Casualty Co.* cease to bar a worker from pursuing an independent tort action against a compensation insurer for bad faith refusal to pay compensation benefits?

In reversing the trial court, the court of appeals reasoned that "Section 59A–16–30 is not so broad in its terms and so clear and explicit in its words as to show it was intended to displace the exclusivity provision of the [Workers' Compensation] Act." (Opinion filed February 24, 1987, page 3, lines 5–6). The court of appeals relied on *Galvan v. City of Albuquerque*, 87 N.M. 235, 531 P.2d 1208 (1975), which held that a "later * * * broader * * * more liberal" statute implicitly repealed an earlier "special" statute. *Id.* at 236, 531 P.2d at 1209. The court held that the later statute was "so broad in its terms and so clear and explicit in its words as to show it was intended to *cover the whole subject*, and therefore, to displace the prior statute * * *." (Emphasis added.) *Id.* at 237, 531 P.2d at 1210. Russell does not contend that Sections 59A–16–1 to –30 were intended by the legislature to "cover the whole subject" of workers compensation actions asserted against insurers who refuse or fail to pay compensation benefits. Rather, he argues that these sections implicitly amended the Workers' Compensation Act by allowing a cause of action against compensation insurers for bad faith refusal to pay compensation benefits. We agree with Russell on this point.

In our opinion, the legislature, in enacting Sections 59A–16–1 to –30, intended to broaden the Workers' Compensation Act so as to provide for a separate tort action against insurers who in bad faith refuse to pay compensation benefits. In

---

**3.** 1973 Laws, ch. 8, §§ 5, 6–10, formerly codified as NMSA 1978, § 59–11–13(I)(5) and §§ 59–11– 14 to –18, repealed by Laws 1984, ch. 127, § 997.

other words, we hold that the private right of action created by Section 59A–16–30 applies only to intentional, willful refusal to pay compensation benefits, and not to an insurer's negligent or dilatory failure to pay benefits, since the latter situation is already covered by the Workers' Compensation Act.

■ NMSA 1978, Section 52–1–6(D) (Repl.Pamp.1987) provides: "Nothing in the Workmen's Compensation Act * * * shall affect or be construed to affect, in any way, the existence of * * * any claim or cause of action which the workman has against * * * the insurer * * * of his employer." In *Dickson,* we read those words as restating "the exclusivity of compensation benefits in a slightly different manner." 98 N.M. at 480, 650 P.2d at 2. In light of the new statute (Section 59A–16–1 to –30), however, we conclude that Section 52–1–6(D) should be read as permitting the cause of action which Russell asserted in count II of his complaint. Specifically, where a cause of action is asserted against a workers' compensation insurer for damages unrelated to the workers' physical or psychological job-related disability, then such a cause of action is independent of, and separate from, the cause of action contemplated by the Workers' Compensation Act, and may be predicated on Sections 59A–16–1 to –30.

We note that some jurisdictions which have followed the same line of reasoning as *Dickson* have different state procedures or remedies than are available in New Mexico. *See Hixon v. State Compensation Fund,* 115 Ariz. 392, 565 P.2d 898 (App.1977), decided in a jurisdiction where hearings before an industrial commission are provided for, and *Young v. United States Fidelity & Guar. Co.,* 588 S.W.2d 46 (Mo.App. 1979), decided in a jurisdiction where a state agency reviews and monitors compensation claims. Jurisdictions which have relied on the exclusivity of workers' compensation statutes to bar a separate tort action have indicated that a different result would obtain if, as we have held here, the cause of action is premised on intentional rather than negligent refusal to pay. *See Staf-*

*ford v. Westchester Fire Ins. Co.,* 526 P.2d 37 (Alaska 1974), *overruled on other grounds, Cooper v. Argonaut Ins. Co.,* 556 P.2d 525 (Alaska 1976); *Hays v. Aetna Fire Underwriters,* 187 Mont. 148, 609 P.2d 257 (1980); *Penn v. Standard Accident Ins. Co.,* 4 A.D.2d 796, 164 N.Y.S.2d 618 (1957).

Jurisdictions which have allowed recovery have done so on the following grounds, each of which is supportive of our decision herein. *See Martin v. Travelers Ins. Co.,* 497 F.2d 329 (1st Cir.1974), holding that the exclusivity provision in the Maine workers' compensation statute extended only to the employer and not to the insurer; *Gibson v. Nat'l Ben Franklin Ins. Co.,* 387 A.2d 220 (Me.1978), where the exclusivity was said to pertain only to injuries arising out of and in the course of employment and not to bad faith refusal to pay benefits on the part of the insurer; *Broaddus v. Ferndale Fastener Div.,* 84 Mich.App. 593, 269 N.W. 2d 689 (1978), holding that the exclusivity provision of the state's workers' compensation statute did not bar a tort action alleging nonphysical injury; *Reed v. Hartford Accident & Indem. Co.,* 367 F.Supp. 134 (E.D.Pa.1973), and *Coleman v. Am. Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979), both holding that an action against an insurer sounding in tort would lie where the misfeasance complained of was not related to the workers'. employment; *Hollman v. Liberty Mut. Ins. Co.,* 712 F.2d 1259 (8th Cir.1983), holding that a bad-faith refusal to pay benefits involves not the Workers' Compensation Act itself but a separate tort independent of industrial injury.

■ Having read respondents' motion for rehearing, we conclude that the only viable issue raised therein concerns the contention that the workers' compensation statute, known at the time of Russell's complaint as the workmen's compensation statute, NMSA 1978, §§ 52–1–1 to –59 (Orig.Pamp.), revised as amended in NMSA 1978, §§ 52–1–1 to 52–6–25 (Repl.Pamp. 1987), excludes a worker injured on the job from being considered an insured as specified in Section 59A–16–20(E). That subsec-

tion censures an insurer for "not attempting in good faith to effectuate prompt, fair and equitable settlements of an *insured's* claims in which liability has become reasonably clear." § 59A–16–20(E). (Emphasis added.)

Respondents argue that the workers' compensation contract is one of indemnity, involving an insurer and an insured, and that "insured" can only mean the employer and not the employee. As respondents interpret the workers' compensation statute and the Trade Practices and Fraud article of the insurance code, the worker has no place in the relationship between insurer and employer. To respondents, since the workers are not insureds, they are little more than uninvolved bystanders consigned passively to await their fate at the hands of those who are the true arbiters of authority, the insurer and the employer. We disagree with respondents' assessment of the situation.

We note first of all that other sections of the Trade Practices and Fraud article are broader than the section with which we deal here in that they equate insureds with "claimants." See, for example, Section 59A–16–20(J), which speaks of "making known to insureds or *claimants* * * *." § 59A–16–20(J). Such language indicates to us that the legislature did not intend to limit Article Sixteen simply to the traditional notion of "insured"; that is, it intended to expand that notion to parties other than those who may have signed a written contract of insurance beneath a blank reading "insured."

We are referring to parties traditionally referred to in contract law as third-party beneficiaries, and in tort law as incidental tort victims. It is clear that the law today has moved drastically away from the strict limitations of privity of contract which the respondents would impose in this case. The law has expanded on many fronts to the point where third-parties who have made no formal contractual obligation with either the promisor or promisee to a contract are nonetheless capable of asserting standing as beneficiaries to the contract. The Restatement (Second) summarizes the developing trend of judicial opinion in this area when it says that non-contractual liability of a promisor to a third party is valid when it "is consistent with the terms of the contract and with *the policy of the law authorizing the contract* and prescribing remedies for its breach." Restatement (Second) of Contracts § 313(2)(b) (1981) (emphasis added). In the case before us we have already concluded that Russell's right to recover against the insurer is consistent with the policy of the law authorizing causes of action under Article Sixteen.

As to the issue of congruence with the written contract between the insurer and employer, it is universally typical for such contracts to contain language precluding actions by third parties against the insurer. But that does not mean that such language is valid, especially if it is contrary to public policy. *See Shingleton v. Bussey,* 223 So.2d 713 (Fla.1969). Further, we have held that "[t]he paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries. [Cases omitted.] Such intent must appear *either* from the contract itself *or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). (Emphasis added.) In other words, neither this court nor Russell is limited by the terms of the contract between the insurer and the employer from arriving at a conclusion that Russell is a third-party beneficiary. And since in our original opinion we presented evidentiary reasons as to why Russell should benefit from the contract between the insurer and the employer—in that the legislature in Article Sixteen prescribed that he should so benefit—there is no further need to address ourselves to the issue of evidence as to why Russell is an intended beneficiary.

Finally, we are not unmindful of the insurer's obligation to Russell in tort as well as in contract. Here too the traditional rule has been expanded so as to enlarge the class of third parties who may avail

themselves of an action against contracting parties.

[B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.

W. PROSSER AND W. KEETON, THE LAW OF TORTS § 93, p. 667 (1984).

■ For these reasons, we hold that Russell was an intended beneficiary of the contract between his employer and the insurer. The motion for rehearing having been granted and this opinion being substituted for our initial opinion, any inference or statement in the motion for rehearing that we reverse our original holding is denied. The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and
WALTERS and RANSOM, JJ., concur.

STOWERS, J., dissenting.

STOWERS, Justice, dissenting.

Having considered the substituted opinion in this case I still dissent.

The issue in this case is whether Article 16 of the Insurance Code, entitled "Trade Practices and Frauds," NMSA 1978 §§ 59A–16–1—59A–16–30 (Orig.Pamp. and Cum.Supp.1987) can be grafted into the Workers' Compensation Act, NMSA 1978, §§ 52–1–1—52–1–70 (Repl.Pamp.1987) as a new and additional cause of action. The answer is no.

This concept of grafting a new cause of action into the workers' compensation statute was dealt with in the case of *Dickson v. Mountain States Mutual Casualty Co.*, 98 N.M. 479, 650 P.2d 1 (1982). In that case, this Court specifically stated that all statutory and common-law rights and remedies were abolished except as provided by the Workers' Compensation Act. This concept has been further considered in the cases of *Chavez v. Kennecott Copper Corp.*, 547 F.2d 541 (10th Cir.1977) (New Mexico Workmen's Compensation Act was the exclusive remedy for denial of a claim for compensation, whether in good faith or bad faith) and *Escobedo v. American Employers Insurance Co.*, 547 F.2d 544 (10th Cir.1977) (plaintiff's theory that the alleged bad faith of defendant in terminating the installment payments of compensation created a cause of action separate and apart from workmen's compensation action failed as the Workmen's Compensation Act provided the exclusive remedy). The exclusivity of the Workers' Compensation Act was also addressed in *Mountain States Telephone & Telegraph Co. v. Montoya*, 91 N.M. 788, 581 P.2d 1283 (1978), wherein this Court stated:

Once a workmen's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier. This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.

*Id.* at 791, 581 P.2d at 1286 (quoting 2A A. Larson, *The Law of Workmen's Compensation* § 65.10 (1976)). Even Section 52–1–6 of the Workers' Compensation Act itself recognizes the exclusivity of compensation benefits. This is the law in the state of New Mexico and has been for some period of time.

In looking at Article 16, specifically Section 59A–16–30 entitled "Private right of action," it becomes readily apparent that this right of action is limited in two ways. First, the person has to be covered by Article 16 and must have suffered damages. Second, the damages suffered must be as a result of a violation of Article 16 of the Insurance Code. These then are the

two basic requirements before you have a private right of action.

A careful reading of the causes of action provided for under Article 16 makes it very clear that it was never intended to apply to the Workers' Compensation Act. Nor, in any reasonable reading of the statute, can you conclude that it was intended to in any way overrule the exclusivity provisions of the Workers' Compensation Act. Nor can you find any reasonable implication that there was an intent to amend the Workers' Compensation Act in any way.

In view of the history of the Workers' Compensation Act, it is readily apparent that if this kind of change is to occur, it should occur through appropriate legislative action. *See Varos v. Union Oil Co.*, 101 N.M. 713, 688 P.2d 31 (1984). This kind of a change in the application of two statutes requires legislative enactments wherein the Legislature speaks clearly to the subject matter and provides the proper amendments to the statutes to reach the conclusions that the majority suggests are to be found now. I cannot find this.

As we have stated many times, this Court will not interject itself into those areas which it deems appropriate for legislative action. *Sanchez v. Bernalillo County*, 57 N.M. 217, 257 P.2d 909 (1953). I think that this is one of those areas and, for that reason, I dissent.