889 P.2d 1223

Jaime Tena CRUZ, Plaintiff–Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY and John Mayfield, Defendants–Appellees.**

No. 22221.

Supreme Court of New Mexico.

Jan. 25, 1995.

James A. Burke, Santa Fe, for appellant.

Hatch, Allen & Shepherd, P.A., Kimberly A. Franklin, Albuquerque, for appellees.

## OPINION

RANSOM, Justice.

Jaime Tena Cruz appeals the dismissal of his action against Liberty Mutual Insurance Co. and its adjuster, John Mayfield, for bad-faith breach of a workers' compensation settlement agreement. The trial court conclud-ed that the Workers' Compensation Administration had exclusive jurisdiction over this subject. We affirm the trial court's dismissal.

*Facts and proceedings.* In December 1986 Cruz was hit by a falling tree while working as a logger and suffered an injury compensable under the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl. Pamp.1991 & Cum.Supp.1994). Cruz received medical treatment in the form of trigger-point injections and acupuncture performed or prescribed by Dr. Bert Lies from 1987 to 1991. As the workers' compensation insurance carrier, Liberty Mutual paid the costs of these treatments. Neither Cruz nor his employer filed any claim or petition in the Workers' Compensation Administration until January 1992 when Liberty Mutual and Cruz entered into a settlement agreement. In exchange for Cruz giving up his rights to biweekly compensation and lifetime medical treatment, Liberty Mutual agreed to pay him a lump-sum of $41,000 and agreed to pay for "all necessary and reasonable medical expenses related to the work related injury for a period of three years from the date of approval of [the agreement]." The Administration approved the settlement on February 4.

On March 19, 1993, Liberty Mutual petitioned the Administration for an independent medical examination. On April 14 the Administration granted the petition, and two months later Cruz saw Dr. Lloyd Hurley. Dr. Hurley determined that acupuncture treatment was appropriate but that the trigger-point injections were not reasonable and necessary. As a result of Dr. Hurley's diagnosis, Liberty Mutual discontinued payment for the injections.

On June 28 Cruz petitioned the Administration for an order reinstating the discontinued payments. The Administration set a hearing for December 1, but two days before that date Cruz filed a motion to dismiss without prejudice, and the Administration granted that motion. On December 22 Cruz filed a complaint in district court alleging fraud, bad faith, breach of contract, breach of the insurance code, civil conspiracy, invasion

of privacy, negligent misrepresentation, and racketeering. All of the allegations in the complaint were based upon Liberty Mutual's refusal to pay for continuing treatment.

After receiving the complaint, Liberty Mutual moved that the Administration reinstate Cruz's worker's compensation action. The Administration granted the motion and subsequently held a hearing only on whether the trigger-point injections were reasonable and necessary. The Administration determined that the treatments were reasonable and necessary and ordered Liberty Mutual to reinstate coverage.

During the pendency of the proceedings before the Administration, Liberty Mutual moved that the district court dismiss Cruz's complaint. The trial court concluded that it lacked subject matter jurisdiction over the complaint because of the exclusivity provision of the Workers' Compensation Act. *See* § 52–1–6(E). Consequently, the court granted Liberty Mutual's motion and dismissed Cruz's complaint.

*The Workers' Compensation Act provides an exclusive remedy for bad-faith claims.* The principal issue in this case is whether the Act provides an exclusive remedy for claims of bad faith in withholding payments under an approved worker's compensation settlement agreement. Cruz argues that a bad-faith-breach-of-contract claim is separate from a claim for job-related disability benefits and thus is not covered by the Act, citing for support *Russell v. Protective Insurance Co.*, 107 N.M. 9, 12, 751 P.2d 693, 696 (1988). Liberty Mutual argues that the legislature amended the Act subsequent to *Russell,* thereby bringing bad-faith actions within the exclusivity provision of the Act. Finding that the amendment to the Act is remedial in nature, we agree with Liberty Mutual.

In *Russell* this Court addressed whether an action for bad-faith refusal to pay workers' compensation benefits is barred by the exclusivity provision of the Workers' Compensation Act. We determined that bad-faith actions are not covered by the Act and held that such actions may be brought in district court pursuant to the unfair practices provisions of the Insurance Code. *Id.* We stated our belief that the legislature intended

the unfair practices provisions of the Insurance Code to broaden the Workers' Compensation Act to allow an action for bad faith. *Id.* at 11, 751 P.2d at 695. We based our belief in part on the fact that the Workers' Compensation Act did not contain a remedy for situations in which the employer or insurer refused in bad faith to pay compensation benefits. *Id.* at 11–12, 751 P.2d at 695–96.

After *Russell* our legislature amended the Workers' Compensation Act to include an action for "unfair claim-processing practices or bad faith by an employer, insurer or claim-processing representative relating to any aspect of the Workers' Compensation Act." NMSA 1978, § 52–1–28.1 (Repl. Pamp.1991). This amendment went into effect on January 1, 1991, 1990 N.M. Laws (2d S.S.), ch. 2, § 153, and brought all bad-faith claims within the exclusivity provision of the Act, *see* § 52–1–6(E) (stating that Act provides exclusive remedy). In essence, the legislature added to the Act the remedy that was missing in *Russell.*

Cruz argues that Section 52–1–28.1 does not apply to this case because his injury occurred in 1986, and the amendment did not go into effect until January 1, 1991. Accordingly, he argues that *Russell* controls this case. Certainly, if *Russell* controlled this case, Cruz would have a procedural right to file his action for bad faith in district court.

The legislature, however, abrogated Cruz's right to file bad-faith actions in district court by adopting Section 52–1–28.1. This Section is not substantive in nature; it does not create a new duty, right, or obligation under the law. *See Gray v. Armijo,* 70 N.M. 245, 248, 372 P.2d 821, 823 (1962) (defining substantive law). Instead, it proscribes a method of obtaining redress and is procedural or remedial. *See Hale v. Basin Motor Co.,* 110 N.M. 314, 319, 795 P.2d 1006, 1011 (1990). Because Section 52–1–28.1 is remedial in nature, it is to be applied retroactively to accrued cases not filed and pending at the time of enactment. *Id.* at 319–20, 795 P.2d at 1011–12. Thus Section 52–1–28.1 applies to this case despite the fact that Cruz's action for worker's compensation benefits accrued prior to its enactment.

Cruz argues that the application of Section 52-1-28.1 to his case violates Article IV, Section 34 of the New Mexico Constitution. Section 34 provides: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure in any pending case." N.M. Const. art. IV, § 34. This Court has already noted, however, that the plain language of Section 34 makes it clear that "[r]emedial and procedural rights are protected constitutionally from abrogation *only after* a cause of action is pending." *Romero v. New Mexico Health & Env't Dep't,* 107 N.M. 516, 519, 760 P.2d 1282, 1285 (1988) (emphasis added). "For a case to be pending, it must be filed on the docket of some court." *Id.* In this case, Liberty Mutual asserts, and Cruz does not dispute, that neither party filed any complaint or petition in any court until 1992 when the parties sought approval of their lump-sum settlement agreement by the Administration. This case, therefore, was not filed and pending until after the enactment of Section 52-1-28.1. As a result, Section 52-1-28.1 controls, and the Workers' Compensation Administration has exclusive jurisdiction over Cruz's bad-faith claims.

*The remedy provided by Section 52-1-28.1 is adequate.* Cruz argues that even if Section 52-1-28.1 applies retroactively, it does not provide adequate relief, citing for support *Michaels v. Anglo American Auto Auctions,* 117 N.M. 91, 869 P.2d 279 (1994). In *Michaels* this Court reviewed whether an action for retaliatory discharge fell within the exclusivity provision of the Act. Section 52-1-28.2 of the Act provides a remedy for retaliatory discharge in that the employer would have to rehire the employee and pay civil penalties, but that remedy does not cover the employee's lost wages from the date of discharge to the date of rehiring and other damages "to the individual naturally flowing from the [retaliatory discharge]." *Id.* at 93, 869 P.2d at 281. The Court determined that Section 52-1-28.2 did not provide an adequate remedy because an employer "could successfully avoid rehiring a worker for an unreasonable length of time with little or no sanction." *Id.* at 94, 869 P.2d at 282. In essence, the Court determined that the exclusivity provision of the Act does not apply to bar causes of action for retaliatory discharge involving intentional torts relating to employment.

■ This case is different in that Cruz's cause of action is related to benefits, not employment. The bad-faith refusal to pay for continuing medical treatment would be a "matter relating to the occurrence of or payment for any injury" and thus falls within the scope of the exclusivity provision. Section 52-1-6(E). Further, Section 52-1-28.1 provides an adequate remedy. The purpose of the bad-faith action in the Act is to secure benefits for the employee and penalize the employer or insurer. Under Section 52-1-28.1, the employee receives all compensation for benefits due and owing and "shall receive" an extra "benefit penalty" of up to twenty-five percent of the claim. Section 52-1-28.1(B). Although this penalty may not be a great amount when the amount of the claim is small, it provides sufficient deterrence to prevent an insurer from denying benefits in bad faith and enforces the public policy against the bad-faith handling of workers' compensation claims. In addition, although this Section may not provide a recovery for emotional distress or an award of punitive damages, we previously have held that "the employer or insurer's liability is limited to that set forth in the Act." *Dickson v. Mountain States Mut. Cas. Co.,* 98 N.M. 479, 481, 650 P.2d 1, 3 (1982) (barring recovery of emotional distress damages under the Act). Thus we hold that Section 52-1-28.1 does provide an adequate remedy and that an independent cause of action for bad-faith refusal to make medical payments is barred by the exclusivity provision of the Act.

■ *The Workers' Compensation Administration has continuing jurisdiction over a lump-sum settlement agreement.* When an employer or insurer and an employee agree to a lump-sum settlement for workers' compensation benefits, and that agreement is reduced to writing and is signed, it becomes "a binding expression of the parties' intent." *Rojo v. Loeper Landscaping, Inc.,* 107 N.M. 407, 410, 759 P.2d 194, 197 (1988). A lump-sum settlement agreement, however, must be submitted to the Workers' Compensation Administration for approval. NMSA 1978,

§ 52–5–13 (Repl.Pamp.1992). If the Administration finds that the agreement is "fair, equitable and consistent with the provisions of the Workers' Compensation Act," it must "approve the agreement by order, and the order shall not be set aside or modified except as provided in the applicable law." Section 52–5–14(A); *accord Rojo,* 107 N.M. at 410, 759 P.2d at 197 (holding that if workers' compensation hearing officer made necessary findings in support of settlement agreement, officer must approve it).

Once the Administration approves of a lump-sum settlement agreement, it has continuing jurisdiction over its order and may "terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act." Section 52–5–9. The Administration also has continuing jurisdiction to determine that an employer is in default of payments due under a compensation order, Section 52–5–10(A), and proceedings to enforce a compensation order may be instituted only in the Administration, Section 52–5–10(C). Only after the Administration determines that an employer is in default on payments and enters a supplementary order declaring the amount of compensation in default may the employee petition the district court for relief. Section 52–5–10(B). Even then, the employee's petition for relief in the district court is limited to the right to seek a judgment on the supplementary compensation order. *Id.*

We conclude that the legislature intended that the Administration have continuing jurisdiction over both modification and enforcement of lump-sum settlement agreements. Thus, if Cruz believes that Liberty Mutual breached its duties under the agreement, the proper venue in which to pursue that claim is the Workers' Compensation Administration.

*Conclusion.* Because Cruz's cause of action is related to benefits and is covered by a provision in the Workers' Compensation Act, and because the Workers' Compensation Administration has continuing jurisdiction over the enforcement of the lump-sum settlement agreement, the Workers' Compensation Act provides the exclusive remedy. The trial court correctly determined that it lacked subject-matter jurisdiction. We therefore affirm.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.