## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMSC-029**

**Filing Date:  June 17, 2010**

**Docket No.  32,032**

**VAL JOLLEY, personal representative of the**
**Estate of JOHN EVERETT STAPLETON, deceased,**

> **Plaintiff,**

**v.**

**ASSOCIATED ELECTRIC & GAS INSURANCE**
**SERVICES LIMITED (AEGIS), a foreign insurer,**
**and JOHN DOES 1-5,**

> **Defendants.**

**CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW MEXICO**
**James A. Parker, U.S. District Court Judge**

Guebert Bruckner P.C.
Terry R. Guebert
Donald George Bruckner, Jr.
Albuquerque, NM

for Plaintiff
Conklin, Woodcock & Ziegler, P.C.
Robert C. Conklin
Jacqueline M. Woodcock
Albuquerque, NM

Brickley, Sears & Sorett, P.A.
Henry P. Sorett
Boston, MA

for Defendants

## OPINION

**DANIELS, Chief Justice.**

1

**{1}** This case comes to us on certification from the United States District Court for the District of New Mexico to determine whether the third-party bad faith cause of action against a compulsory automobile liability insurance carrier, for failure to settle an underlying lawsuit, which we recognized in *Hovet v. Allstate Insurance Co.*, 2004-NMSC-010, 135 N.M. 397, 89 P.3d 69, should be extended to bad faith claims by third parties against carriers providing nonmandatory excess liability insurance coverage. We conclude that neither the holding nor the doctrinal underpinnings of *Hovet* support such an extension, and we answer the certified question in the negative.

## I.      FACTUAL AND PROCEDURAL HISTORY

**{2}** Plaintiff Val Jolley is the personal representative of the estate of John E. Stapleton, who died at the age of nineteen in an accident that occurred in 2002. *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶¶ 1-2, 145 N.M. 350, 198 P.3d 376. On the day of the accident, Stapleton, Cody Amezcua, and other young people visited the Glade Run Recreation Area located on federal land outside Farmington, New Mexico. Stapleton drove backward into an unprotected natural gas wellhead operated by Energen Resources Corporation (Energen), breaking the steel gas line and causing a release of natural gas that ignited. Stapleton and Amezcua died as a result of the explosion and fire caused by the collision, and their estates filed wrongful death suits against Energen.

**{3}** At the time of the accident, Energen had an excess reimbursement insurance policy with Defendant, Associated Electric and Gas Insurance Services Limited (AEGIS), in the amount of $35,000,000. Under the policy, AEGIS contractually agreed to reimburse Energen for incurred damages and defense costs exceeding Energen's self-insured retention of $500,000. Before Plaintiff's wrongful death suit resulted in pretrial settlement discussions, Energen had exhausted its retention by payment of defense costs and claims associated with this accident. As a result, any settlement offer or trial judgment in favor of Plaintiff or the Amezcua estate would have been subject to full reimbursement by AEGIS pursuant to the insurance contract between Energen and AEGIS.

**{4}** The parties did not settle Plaintiff's suit before trial, despite a voluntary mediation and a subsequent court-ordered settlement conference among Plaintiff, Energen, and AEGIS. Outside the context of a mediation or settlement conference, Plaintiff made a written settlement demand in the amount of $2,000,000. Energen rejected Plaintiff's offer without making a counteroffer, but settled with the Amezcua estate for $2,000,000. AEGIS reimbursed that sum to Energen.

**{5}** Plaintiff's wrongful death suit went to trial, and a jury returned a verdict finding that Energen was negligent and 65 percent at fault and that Stapleton was also negligent and 35 percent at fault. The jury found compensatory damages of $2,957,000, which were reduced by Stapleton's negligence to $1,922,050. The jury also awarded $13,000,000 in punitive damages against Energen. The New Mexico Court of Appeals affirmed the verdict on

September 22, 2008. *Jolley*, 2008-NMCA-164, ¶ 1. Energen filed petitions for writ of certiorari in this Court and the United States Supreme Court, but both were denied. Having exhausted all avenues of appeal, Energen paid a total of $20,610,413 on Plaintiff's verdict and was fully reimbursed by AEGIS.

**{6}** Plaintiff then brought suit in the First Judicial District Court against AEGIS, pursuant to the Trade Practices and Frauds article (Article 16) of the New Mexico Insurance Code, NMSA 1978, Sections 59A-16-1 to -30 (1984, as amended through 2009), alleging that AEGIS failed to make a good faith effort to settle Plaintiff's wrongful death lawsuit. AEGIS removed the matter to the United States District Court for the District of New Mexico and filed a motion to dismiss.

**{7}** Senior United States District Judge James A. Parker certified two questions to this Court under the procedures in NMSA 1978, Section 39-7-4 (1997), and Rule 12-607 NMRA. Pursuant to NMSA 1978, Section 39-7-5 (1997), we reformulate the certified questions as follows:

> (1) Whether Plaintiff, a third-party claimant, has a statutory bad faith cause of action against AEGIS, an excess liability insurer, for failure to settle an underlying lawsuit, pursuant to the New Mexico Insurance Code and as recognized by this Court in *Hovet*, where the excess liability insurance policy between AEGIS and the insured was not mandated by any state law.
> (2) If such a cause of action exists, whether the third party can recover as damages the costs and contingency attorney's fees incurred by the third party in an underlying action where the third party was awarded at trial an amount far in excess of the third party's highest pretrial settlement offer.

We accepted certification and now answer the first question in the negative. Having done so, we find it unnecessary to reach the second question.

## II.    STANDARD OF REVIEW

**{8}** "Statutory interpretation is a question of law, which we review de novo." *Hovet*, 2004-NMSC-010, ¶ 10. "Our primary goal is to ascertain and give effect to the intent of the Legislature." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. "To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet*, 2004-NMSC-010, ¶ 10.

## III.    DISCUSSION

**{9}** The issue before this Court is whether Plaintiff has stated an actionable claim under Article 16 of our Insurance Code. This case involves the intersection of two provisions of Article 16, one granting insureds a right to be treated fairly by their insurers, and the other creating a statutory remedy for a violation of that right. Plaintiff alleges that AEGIS violated

3

Section 59A-16-20(E), which requires insurers to "attempt[] in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." To remedy the alleged violation of Section 59A-16-20(E), Plaintiff relies on Section 59A-16-30, which provides in relevant part that "[a]ny person . . . who has suffered damages as a result of a violation of [Article 16] by an insurer or agent is granted a right to bring an action in district court to recover actual damages." The tension in this case is the discrepancy between the language in Section 59A-16-20(E), requiring insurers to "attempt[] in good faith to effectuate prompt, fair and equitable settlements of an *insured's* claims," and Section 59A-16-30, granting an express statutory cause of action to "*[a]ny person* covered by [Article 16] who has suffered damages as a result of a violation of that article . . . ." (Emphasis added.) There is no question that Plaintiff is not an "insured," but the question before us is whether Plaintiff is a "person" who is granted a bad faith cause of action under Section 59A-16-30.

**{10}** On two previous occasions, this Court has recognized that a third-party plaintiff who is an intended beneficiary of statutorily mandated insurance has a private right of action under Section 59A-16-30 to remedy an insurer's breach of the duty of fair settlement practices established by Article 16. *See Hovet*, 2004-NMSC-010, ¶¶ 20, 23 (explaining that "[t]hird parties, having claims against drivers who are insured under compulsory automobile liability policies, are intended beneficiaries of those insurance policies" and can "sue the insurer for unfair settlement practices under the Insurance Code"); *Russell v. Protective Ins. Co.*, 107 N.M. 9, 13-14, 751 P.2d 693, 697-98 (1988) (allowing an injured worker to sue an insurer for bad faith refusal to pay workers' compensation benefits because the worker "was an intended beneficiary of the contract between his employer and the insurer"), *superseded by statute as stated in Meyers v. Western Auto*, 2002-NMCA-089, ¶ 16, 132 N.M. 675, 54 P.3d 79.

**{11}** Although our precedents recognize that third-party claimants may have a private action against insurers under Article 16 in certain circumstances, that right of action has been found only where specific legislation indicated that our Legislature contemplated classes of persons to be protected under the Insurance Code. In *Russell*, this Court rejected the insurer's argument that only the employer, as an "insured," could bring a statutory cause of action under the Insurance Code. 107 N.M. at 13, 751 P.2d at 697. *Russell* explained that, in the context of the Workers' Compensation Act, "the legislature did not intend to limit Article Sixteen simply to the traditional notion of 'insured'" and that the right of the worker "to recover against the insurer is consistent with the policy of the law authorizing causes of action under Article Sixteen." *Id.* Because the Workers' Compensation Act made Russell an intended beneficiary, he was a "person covered by [Article 16] who has suffered damages as a result of a violation of that article by an insurer" as defined in Section 59A-16-30 and could therefore assert a private right of action against the insurer.

**{12}** Two years later, our Legislature codified the validity of third-party suits by workers against insurers by adding a provision to the Workers' Compensation Act that allows workers to bring claims "alleging unfair claim-processing practices or bad faith by an

4

employer, insurer or claim-processing representative relating to any aspect of the Workers' Compensation Act." NMSA 1978, § 52-1-28.1(A) (1990). The Insurance Code was amended that same year to provide "that the Workers' Compensation Act . . . provide[s] exclusive remedies." Section 59A-16-30.

**{13}** In *Hovet*, 2004-NMSC-010, ¶ 9, this Court applied the reasoning in *Russell* to hold that, in the context of "statutorily mandated automobile liability insurance, . . . the Legislature intended to provide a statutory cause of action under the Insurance Code to third-party claimants." Although many jurisdictions deny third parties standing to sue insurers for violations of unfair claims practices statutes, the *Hovet* Court recognized that the express private right of action established by our Legislature in Section 59A-16-30, combined with the policies embodied in the New Mexico Mandatory Financial Responsibility Act (MFRA), NMSA 1978, Sections 66-5-201 to -239 (1978, as amended through 2009), demonstrated our Legislature's intent to allow third-party rights of action. *Hovet*, 2004-NMSC-010, ¶¶ 11-12, 19.

**{14}** The express legislative purpose of the MFRA is to mitigate the "catastrophic financial hardship" that can result from automobile accidents by "requir[ing] residents of New Mexico who own and operate motor vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy." Section 66-5-201.1 (1998). Owners or operators of automobiles in New Mexico are required to pay MFRA premiums, not so much for their own protection, but for the protection and benefit of injured third parties. *See Hovet*, 2004-NMSC-010, ¶ 19 ("'[A]n insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public.'" (quoting *Breeden v. Wilson*, 58 N.M. 517, 524, 273 P.2d 376, 380 (1954))).

**{15}** The policy and purpose of the MFRA have long driven New Mexico's insurance law jurisprudence, ensuring broad protection for innocent accident victims. For example, in *Estep v. State Farm Mutual Automobile Insurance Co.*, 103 N.M. 105, 703 P.2d 882 (1985), this Court held that an insurance contract excluding family or household members of the insured from the class of beneficiaries violated "[t]he fundamental purpose for the enactment of financial responsibility laws—namely, protecting innocent accident victims from financial hardship," *id.* at 110, 703 P.2d at 887, and as a result held that such exclusions "were and are contrary to public policy and the statutes of this state." *Id.* at 111, 703 P.2d at 888.

**{16}** Similarly, in *State Farm Mutual Automobile Insurance Co. v. Ballard*, 2002-NMSC-030, ¶¶ 1, 4, 132 N.M. 696, 54 P.3d 537, this Court held unenforceable a provision in a Georgia insurance policy that excluded any coverage for household and family members beyond the minimum required by law. Although "[t]he policy of New Mexico is to interpret insurance contracts according to the law of the place where the contract was executed," *id.* ¶ 7 (internal quotation marks and citation omitted), this Court held that applying Georgia law to validate the provision in connection with an accident that had occurred in New Mexico would be inconsistent with the principles and goals of New Mexico's financial responsibility

5

laws and would "violate public policy and fundamental principles of justice." *Id.* ¶¶ 15, 19.

**{17}** In *Raskob v. Sanchez*, 1998-NMSC-045, ¶ 6, 126 N.M. 394, 970 P.2d 580, this Court held that it was proper for a third-party plaintiff to join a liability carrier as a party defendant in a negligence action. "The general rule is that there is no privity between an injured party and the insurer of the negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary . . . ." *Id.* ¶ 3. However, where insurance coverage is mandated by law for the benefit of the public, joinder of the insurer is permissible unless the law expresses legislative intent to the contrary. *Id.* *Raskob* held that the MFRA implicitly allowed direct actions against insurers. *Id.* ¶¶ 6-7; *see also Martinez v. Reid*, 2002-NMSC-015, ¶ 11, 132 N.M. 237, 46 P.3d 1237 ("The fact that the Act mandates liability insurance for the benefit of the public creates a strong inference that the legislature intended to allow joinder of the insurance company in a negligence suit.").

**{18}** Just as the MFRA allows permissive joinder of an insurer in a negligence suit, *Hovet* held that injured third-party claimants who are the statutory beneficiaries of automobile liability insurance policies mandated by the MFRA "may sue the insurer for unfair settlement practices under the Insurance Code." 2004-NMSC-010, ¶ 23.

**{19}** *Hovet* reflected a combination of the Insurance Code's policy of promoting "ethical settlement practices within the insurance industry," *id.* ¶ 17, and the MFRA's policy of providing a "benefit [to] the public generally, innocent victims of automobile accidents, [and] the insured." *Id.* ¶ 19 (internal quotation marks and citation omitted). This Court was careful to explain in *Hovet* that our holding was closely tied to the public policies established by the Legislature in the MFRA: "[C]ompulsory automobile liability insurance under the MFRA has its own strong public policy and judicial precedent that affords third-party claimants a special, if not unique, place in our jurisprudence." *Id.* ¶ 24. Accordingly, we cautioned against reading our holding too broadly: "[O]ur holding today addresses only automobile liability insurance required for the benefit of the public by the MFRA; we do not pass upon potential claims by putative beneficiaries of other kinds of mandatory liability insurance." *Id.*

**{20}** With that caution in mind, we examine the potential application of *Hovet* to the kind of insurance policy involved in this case. This case had nothing to do with Energen's operation of an automobile. Not only is the excess liability policy in this case not mandated by the MFRA, it is not a policy required by any New Mexico law. The purpose of excess coverage insurance, like the indemnification policy in this case that provided reimbursement to the insured for claims expenses incurred in excess of half a million dollars, is different from that of compulsory automobile liability insurance. It is intended for the financial protection of the insured, not the protection of members of the public who may be injured by the insured's operation of an automobile. While the insurance policy here ultimately may be of some benefit to an injured plaintiff, the fact remains that the benefit is not one mandated by New Mexico legislative policy.

6

**{21}**     As we noted in *Hovet*, the vast majority of states deny non-policyholder third parties standing to sue carriers for violation of unfair claims practices statutes. *Id.* ¶ 12. Although we have recognized carefully-drawn exceptions in *Hovet* and *Russell*, where statutory mandates required insurance coverage for the primary benefit of those whose standing to sue was recognized, we have never recognized such a general right to sue by a stranger to the insurance contract in the absence of such mandatory coverage. Indeed, in *Hovet* we noted a number of categories of mandatory insurance that might not be subject to the *Hovet* exception to the general preclusion of third-party suits. *Id.* ¶ 23 n.4. While we are not faced here with any issue concerning *Hovet*'s application to other types of mandatory insurance, we can see no principled reason for extending *Hovet*'s reach so far beyond its carefully limited justifications to encompass the kind of nonmandatory excess policy involved in this case. *Cf. State v. Rowell,* 2008-NMSC-041, ¶ 23, 144 N.M. 371, 188 P.3d 95 ("When lines need to be drawn in creating rules, they should be drawn thoughtfully along the logical contours of the rationales giving rise to the rules, and not as artificial lines drawn elsewhere that are unrelated to those rationales.")

**{22}**     We conclude that the precedent and public policy considerations that dictated our result in *Hovet* neither compel nor support a private right of action for Plaintiff in this case. Although AEGIS owed Energen an Article 16 duty to engage in fair claims practices, neither the Insurance Code nor any other statute imposed any such obligation on AEGIS with regard to Plaintiff. We find nothing indicating that our Legislature intended to extend a private action to claimants who are neither parties to the insurance contract nor special beneficiaries of a statutory scheme requiring mandatory insurance for the benefit of third parties.

**{23}**     In light of our resolution of the first certified question that there is no direct cause of action against the insurer, the second certified question, regarding the measure of damages in such a suit, is moot.

## IV.     CONCLUSION

**{24}**     We accordingly answer the questions certified to this Court as follows: (1) Plaintiff does not have a right to bring a statutory cause of action under Section 59A-16-30 against AEGIS, an excess liability insurer; and (2) the second certified question is not addressed on grounds of mootness.

**{25}     IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR**:

_____

**PATRICIO M. SERNA, Justice**

7

_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for** _Jolley v. Associated Electric & Gas Ins. Servs. Ltd._**, Docket No. 32,032**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-CT | Certification |
| | |
| **IN** | **INSURANCE** |
| IN-BF | Bad Faith |
| IN-IY | Indemnity |
| IN-IP | Insurance Carrier as Party |
| IN-ID | Insurance Code |
| IN-MV | Motor Vehicle Insurance |
| IN-RX | Reinsurance or Excess Insurance |
| IN-SE | Settlement |
| | |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-TP | Trade Practices and Fraud Act |
| | |
| **ST** | **STATUTES** |
| ST-AP | Applicability |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |