This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MICHELLE COHEN and INVISION OPTOMETRY, INC.,**

Plaintiffs-Appellants,

**v.**                                                     **No. 32,391**

**CONTINENTAL CASUALTY COMPANY,**

Defendant-Appellee,

and

**JOSHUA BOONE, JOHN KELLEY, DAVIS AND KELLEY, LLC, DAVIS, KELLEY & BOONE, LLC, and DARWIN NATIONAL ASSURANCE COMPANY,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

The Davis Law Firm, LLC
Ben Davis
Albuquerque, NM

for Appellants

Dixon, Scholl & Bailey, P.A.

Gerald G. Dixon

Lisa Joynes Carrillo

Albuquerque, NM

Wiley Rein LLP

Richard A. Simpson

Washington, D.C.

for Appellee

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

{1}     Appellants sued their former attorneys and associated law firms for malpractice and—in the same action—sought a declaratory judgment against Defendants' insurer to determine the extent of its liability coverage.  The district court found that established case law prohibited direct suits against insurers by an injured party.  On appeal, Appellants make several policy-based arguments for why this case law is obsolete or inapplicable here.  Concluding that we are bound by Supreme Court precedent in this matter, we affirm dismissal of Appellants' complaint against the insurer.

**BACKGROUND**

**{2}** Defendants Boone, Davis, and Kelley, as well as the law firms Davis and Kelley, LLC and Davis, Kelley & Boone, LLC[1] (Attorneys) represented Appellants Cohen and Invision Optometry, Inc. (Appellants) in a prior suit filed against Appellants. The prior suit was resolved when the district court entered judgment against Appellants because they failed to participate in good faith in court-annexed arbitration. After judgment was entered, Appellants sued Attorneys, alleging that Boone committed malpractice in representing them and that Kelley and Davis failed to adequately supervise Boone, among other claims. After Continental Casualty Company (Continental) and Darwin National Assurance Company (Darwin) denied coverage of Attorneys, Appellants amended the complaint to add Continental and Darwin as defendants. In addition to the allegations against Attorneys, Count V of the amended complaint sought a declaratory judgment as to "the rights, status[,] and liabilities of the parties under insurance coverage provided by Defendants Continental and Darwin pursuant to the Declaratory Judgment Act [(DJA)], NMSA 1978[, §§] 44-6-1 [to-]15 [(1975)]."

**{3}** Continental filed a motion to dismiss asserting failure to state a claim (Rule 1-012(B)(6) NMRA) and lack of subject matter jurisdiction (Rule 1-012(B)(1)). The

---

[1]During the period in question, Boone was first an employee of Davis and Kelley, LLC, and later became a member of Davis, Kelley & Boone, LLC.

district court granted Continental's motion to dismiss for failure to state a claim, stating that "[Appellants] have no present rights under the insurance policies" because they "have yet to obtain a judicial determination of liability against [Attorneys.]" The district court rejected Appellants' arguments that it should disregard the holding of *Rhodes v. Lucero*, 1968-NMSC-137, ¶ 4, 79 N.M. 403, 444 P.2d 588. The district court did not reach Continental's arguments regarding subject matter jurisdiction. Following dismissal of Continental from the suit, Appellants' claims against Darwin were dismissed without prejudice by stipulation.

**DISCUSSION**

{4}     Appellants make two related arguments on appeal. First, they argue that "any liability claimant has the same right to seek declaratory relief with respect to coverage disputes that parties to the insurance contract [have.]" Second, they argue that a liability "claimant's declaratory judgment action may be joined together with an underlying legal malpractice action[.]" Both of these contentions are contrary to the general rule in New Mexico, which is that "absent a contractual or statutory provision authorizing the action, an insurance carrier cannot be sued directly and cannot be joined as a party defendant." *Chapman v. Farmers Ins. Grp.*, 1976-NMCA-128, ¶ 11, 90 N.M. 18, 558 P.2d 1157. Appellants do not argue that there is a contractual provision permitting them to sue Continental or join Continental in a suit against

4

Attorneys. Neither do they have a judgment against Attorneys. Thus, Appellants' arguments focus on aspects of declaratory actions that Appellants argue remove those actions from the ambit of the general rule and whether there is a statutory right to sue or join Continental.

**{5}** Although Appellants make interesting policy arguments for their position, none of their arguments permit us to depart from binding precedent. *See id.* ¶ 12 ("A change in public policy rests in the discretion of the Supreme Court."). We address Appellants' arguments in turn.

**Direct Action**

**{6}** Appellants acknowledge that "[t]he general rule is that there is no privity between an injured party and the insurer of the negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary; therefore, the injured party has no claim directly against the insurance company." *Raskob v. Sanchez*, 1998-NMSC-045, ¶ 3, 126 N.M. 394, 970 P.2d 580. Nevertheless, they assert that a declaratory judgment action against an insurer should be permitted.

**{7}** Appellants first argue that "a declaratory judgment action regarding coverage issues is not a 'direct action,' " and that therefore the prohibition of actions against insurers does not apply. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 682 (7th Cir. 1992) (stating that a declaratory action "is not a direct action suit

5

against an insurer" and therefore the prohibition against direct actions by injured parties against insurers does not apply).

{8}     In their second argument, Appellants rely on *Gallegos v. Nevada General Insurance Company*, 2011-NMCA-004, 149 N.M. 364, 248 P.3d 912, to argue that an injured party has a "legally protected interest sufficient to confer standing with respect to [a] coverage controversy [involving the insurer]." In *Gallegos*, this Court considered "whether an injured third party may participate in an action brought under the [DJA] . . . by an automobile insurer to deny coverage to its insured." *Id.* ¶ 6. The Court concluded that the injured party in that case had to be joined because the DJA states that "all persons shall be made parties who have or claim any interest which would be affected by the declaration[.]" *Id.* ¶ 9; *see* § 44-6-12. It determined that this conclusion was consistent with both "[t]he policies underlying New Mexico's Mandatory Financial Responsibility Act" and, under the facts of that case, Rule 1-019 NMRA (indispensable parties). *Gallegos*, 2011-NMCA-004, ¶¶ 12, 13; *see* NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2013). The Court also noted that "[m]ost (if not all) courts to address the issue have found that injured third parties are proper participants in declaratory actions brought by insurers to deny coverage." 2011-NMCA-004, ¶ 15. Those cases recognized "that the argument for allowing a third party to proceed [in a declaratory action] is especially powerful in the context of

third-party liability insurance, where the insured may lose interest and the injured party has the primary motivation to pursue the claim." *Id.* ¶ 14 (internal quotation marks and citation omitted). Thus, the *Gallegos* Court held that "when an automobile insurer brings a declaratory action to deny coverage, both the insured and the existing plaintiffs against the insured are required parties." *Id.* ¶ 18. Appellants ask that we extend the *Gallegos* holding to permit the injured party to *initiate* the action.

{9} Appellants' third argument is a policy assertion that allowing injured parties to bring declaratory actions would "prevent the waste of parties' and judicial resources. . . . Equal ability to know whether a provable loss is subject to insurance indemnification will be a positive step toward settlement and will make litigation outcomes dispositive, collectible[,] and credible." *Wilson v. Cont'l Cas. Co.*, 778 N.E.2d 849, 852 (Ind. Ct. App. 2002). They point to cases in other jurisdictions which have held that an injured party may bring a declaratory action against an insurer. *See, e.g.*, *Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 687 A.2d 652, 659 (Md. 1997) ("[I]t is not necessary that there be a final judgment against an insured tortfeasor . . . before an injured claimant may bring an action against the tortfeasor's liability insurer."); *White v. Nationwide Mut. Ins. Co.*, 644 N.Y.S.2d 590, 590 (App. Div. 1996) (recognizing that the injured person may bring a declaratory judgment action against the insured and the insurer); *cf. Teague v. Bakker*, 931 F.2d 259, 260-61 (4th

7

Cir. 1991) (holding that the plaintiffs had a right to intervene in a declaratory judgment action initiated by the defendants' insurer); *United Servs. Auto. Ass'n v. Simpson*, 485 S.E.2d 337, 341 (N.C. Ct. App. 1997) (same).

{10} Appellants' arguments are resolved by examination of the holding in *Rhodes*, which we are obliged to follow. In that case, the Supreme Court held that dismissal of a declaratory action was not error when there was no "justiciable controversy" because plaintiffs "h[eld] no judgment against [the] defendant . . . [,] their rights of recovery against him [were] contingent[,]" and neither the insurance policy nor statute authorized the suit. 1968-NMSC-137, ¶ 4. Appellants' first contention as to the differences between "direct" and "declaratory" actions is unpersuasive, because *Rhodes* itself addressed a declaratory action. *Id.* Under *Rhodes*, even if there is a difference between "direct" and "declaratory" actions against insurers, the latter is still prohibited.

{11} Application of *Rhodes* also concludes Appellants' second assertion in favor of Continental. Initiation of a declaratory action requires an "actual controversy" between adverse parties. *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 16, 124 N.M. 640, 954 P.2d 72; *see* § 44-6-2. In addition, the interest of the plaintiff must be "real." *City of Las Cruces*, 1998-NMSC-006, ¶ 16 (internal quotation marks and citation omitted). Although Appellants maintain that because "potential interests"

8

sufficed to require joinder in *Gallegos*, such interests should be sufficient to permit initiation of an action, *Rhodes* once more binds us to the opposite conclusion because it made clear that interests dependent on a later determination of liability are not real interests when it stated that because the interest there was "contingent" there was no justiciable controversy. 1968-NMSC-137, ¶ 4.

{12} Finally, Appellants' third argument is unavailing because, although the decisions in other jurisdictions present compelling policy arguments, we are not bound by their conclusions. We are bound instead to the expression of the public policy of New Mexico found in *Rhodes*. Although Appellants urge us to reconsider this policy, we decline to do so because "[a] change in public policy rests in the discretion of the Supreme Court." *Chapman*, 1976-NMCA-128, ¶ 12.

**Joinder**

{13} With respect to joinder, Appellants argue that "the 'common law rule' against joinder . . . is obsolete" because more recent cases have established that the lack of privity between an injured party and the insurer is not a barrier to an action because "a third-party claimant has a legal interest in the outcome of coverage disputes between the insurer and insured." They also argue that they should have a right to join the insurer because the three-part test for joinder has been satisfied. Neither argument is availing.

{14} In support of their first argument, Appellants rely on *Hovet v. Allstate Insurance Co.*, 2004-NMSC-010, 135 N.M. 397, 89 P.3d 69, and *Russell v. Protective Insurance Co.*, 1988-NMSC-025, 107 N.M. 9, 751 P.2d 693, *abrogated by Cruz v. Liberty Mutual Insurance Co.*, 1995-NMSC-006, 119 N.M. 301, 889 P.2d 1223. They argue that those cases stand for the proposition that "[t]he insurance contract is no longer the exclusive and only relevant text on the issue of third-party beneficiary status" and that other evidence may be used to determine if a third party is an intended beneficiary to an insurance policy. Appellants contend that, consistent with *Hovet* and *Russell*, the Rules of Professional Conduct are evidence that an injured party is the intended beneficiary of a professional liability insurance contract and consequently has a legal interest in a coverage dispute.

{15} It is true that the Court in *Russell* observed that "[t]he law has expanded on many fronts to the point where third[]parties who have made no formal contractual obligation with either the promisor or promisee to a contract are nonetheless capable of asserting standing as beneficiaries to the contract." 1998-NMSC-025, ¶ 15. But this observation is tempered by the fact that both *Hovet* and *Russell* ultimately depended on construction of a statutory right to sue found in the Insurance Code. *Hovet*, 2004-NMSC-010, ¶ 9 ("[T]he Legislature intended to provide a statutory cause

of action under the Insurance Code to third-party claimants."); *Russell*, 1988-NMSC-025, ¶ 14. There is no comparable statutory right at work here.

{16} The limitations of the *Hovet* and *Russell* holdings have been recognized in more recent cases. In *Jolley v. Associated Electrical and Gas Insurance Services, Ltd. (AEGIS)*, 2010-NMSC-029, ¶ 21, 148 N.M. 436, 237 P.3d 738, *Hovet* and *Russell* were described as promulgating "carefully[]drawn exceptions . . . where *statutory mandates required insurance coverage* for the primary benefit of those whose *standing to sue was recognized*" to the general rule that there is no "right to sue by a stranger to the insurance contract in the absence of . . . mandatory coverage." (Emphasis added). Similarly, in *Martinez v. Cornejo*, this Court held that "*Hovet* and *Russell* merely held that the [Trade Practices and Fraud Act of the New Mexico Insurance Code] should be broadly construed to allow third-party claimants to bring a private action against an insurer that violates the [Act]." 2009-NMCA-011, ¶ 31, 146 N.M. 223, 208 P.3d 443.

{17} We disagree that the Declaratory Judgment Act itself provides a statutory right to sue an insurer analogous to that addressed in *Hovet* and *Russell*. In *Rhodes*, the plaintiffs sought a declaratory judgment against the defendant's insurer. 1968-NMSC-137, ¶ 3. The Court affirmed dismissal in favor of the insurer because there was not yet a judgment against the defendant, but also because there was no right to

11

sue "authorized by statute." *Id.* ¶ 4. Obviously, the Court did not recognize the Declaratory Judgment Act as creating a right to sue so as to avoid the general rule against direct actions or joinder of insurers. Neither do we.

{18}     In their last argument, Appellants argue that "[j]oinder should be permitted for public policy reasons" under *Raskob*. In that case, the Court acknowledged the general rule against joinder of insurers, but held that "where the insurance coverage is mandated by law for the benefit of the public, generally the insurance company is a proper party." 1998-NMSC-045, ¶ 3 (emphasis omitted). "Thus, joinder will be permitted if 1) the coverage was mandated by law, 2) it benefits the public, and 3) no language of the law expresses an intent to deny joinder." *Id*. Appellants assert that the district court erred in concluding that because the liability insurance here was not mandated by law, the *Raskob* test was not met. We disagree.

{19}     Appellants admit that professional liability insurance for attorneys is not strictly mandatory. They contend, however, that it is "effectively mandat[ory]" under the Rules of Professional Conduct and is therefore "coverage mandated by law." But nothing in the Rules of Professional Conduct requires attorneys to purchase liability insurance. *See* Rule 16-104(C) NMRA. Rule 16-104(C) merely requires that attorneys disclose to clients if and when they do not have coverage at or above a certain amount. Rule 16-104 (C)(1) ("If, . . . the lawyer does not have a professional

12

liability insurance policy with limits of at least one-hundred thousand dollars ($100,000) per claim and three-hundred thousand dollars ($300,000) in the aggregate, the lawyer shall inform the client in writing using the form of notice prescribed by this rule.")  We agree with the district court that this rule does not make professional liability insurance "coverage . . . mandated by law."  Since the first part of the *Raskob* test was not met, there was no reason for the district court to proceed to examine the other parts.  Similarly, we need not reach Appellants' arguments as to those issues.

**CONCLUSION**

{20}     The district court did not err in following the binding precedent found in *Rhodes* nor in determining that the facts of this case did not require joinder as a matter of public policy.  This is not to say that *Rhodes* does not merit reconsideration; it is simply that any such review must be undertaken by the Supreme Court. Accordingly, we affirm.

{21}     **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

13

_____

**LINDA M. VANZI, Judge**